# ARNOLD & PORTER LLP

Peter L. Zimroth
Peter.Zimroth@aporter.com

212.715.1010
212.715.1399 Fax

399 Park Avenue
New York, NY 10022-4690

November 9, 2010

The Honorable Naomi Reice Buchwald
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:   *CBS Broadcasting Inc. v. FilmOn.com, Inc.*, Case No. 1:10-cv-7532-NRB

Dear Judge Buchwald:

The accompanying motion by the plaintiffs seeks entry of an order to show cause why a preliminary injunction with temporary restraining should not be entered against the defendant FilmOn.com, Inc. ("FilmOn"). The purpose of the temporary restraining order and preliminary injunction is to prevent FilmOn from the unauthorized streaming of plaintiffs' copyrighted television programming over the Internet and to mobile devices pending a final determination of the merits of plaintiffs' claims.

We have served defendant's counsel with the accompanying papers. We respectfully ask the Court to schedule an expedited hearing on our application.

As discussed in the accompanying memorandum and declarations, beginning last week FilmOn has been streaming the signals from plaintiffs' Los Angeles broadcast stations over mobile phone systems and the Internet worldwide. FilmOn has not obtained the consent of plaintiffs or any other party to exploit these broadcast signals and the copyrighted programming on them – although FilmOn apparently has negotiated agreements to offer certain other channels, including those with hard-core adult programming. FilmOn describes itself as "the first free, fully functional live television platform for mobile devices including the iPad™, Android™ and BlackBerry™ models . . . [providing access to] programming from all major network TV stations . . . ." FilmOn makes its service available to the public at large without registration, payment, or the downloading of any software, in standard mobile phone and computer Web browsers accessing the FilmOn.com Web site. FilmOn also has announced that it will add to its infringing service in the "coming weeks" broadcast signals from several other markets, including New York, Chicago, Miami, Dallas, Houston and Seattle.

# ARNOLD & PORTER LLP

The Honorable Naomi Reice Buchwald
November 9, 2010
Page 2

As the accompanying memorandum of law demonstrates, the four factors to be considered in deciding plaintiffs' motion – likelihood of success on the merits, irreparable injury faced by the movants, balancing of the equities, and the public interest – compel the granting of this motion.

<u>Plaintiffs have a substantial likelihood of success on the merits</u>. It is undisputed that (1) plaintiffs own the copyrights in numerous television programs aired by broadcast television stations and (2) FilmOn makes public performances of that copyrighted programming, within the meaning of Section 106(4) of the Copyright Act, 17 U.S.C. § 106(4), without having been granted a license by any of the plaintiffs. Under the copyright law, the burden is on FilmOn to demonstrate that it has a legal right to stream plaintiffs' copyrighted programming over the Internet and to mobile devices – something that cannot be demonstrated.

<u>Plaintiffs will suffer irreparable injury in the absence of a preliminary injunction</u>. The plaintiffs in this case are the major commercial television networks and their copyright-owning affiliates. As reflected in declarations submitted by the plaintiffs, if FilmOn is permitted to stream copyrighted programming without the consent of the affected television stations or copyright owners, every revenue model supporting the United States television industry is threatened. The television broadcasting business is based on licenses and retransmission agreements among the creators and distributors of content reflecting the value of television programming. These agreements typically have temporal and geographical limitations and frequently require copy controls. Television content owners typically operate Internet Web sites at which their content is shown in a controlled environment for a limited period of time. These content owners license other Internet Web sites under different conditions for different time periods. The revenue model of the broadcast television industry is dependent upon the ability of the television networks and their affiliated broadcast stations to control the distribution of their content and to protect that content from unauthorized performance and copying.

<u>The balance of hardships between plaintiffs and defendant tips decidedly in the plaintiffs' favor</u>. FilmOn would face minimal, if any, harm in delaying the introduction of its service until after final adjudication in this matter. On the other hand, if no injunction is entered, the plaintiffs will continue to suffer the irreparable injury described in the motion.

<u>A preliminary injunction would not harm the public interest</u>. The Copyright Act serves the public interest by providing incentives for copyright owners to create, invest in, and disseminate creative content. The public interest is served by restraining FilmOn's unauthorized service, which infringes plaintiffs' copyrights, and thereby undermines those incentives.

*     *     *     *

# ARNOLD & PORTER LLP

      For the reasons set out above and discussed at further length in the accompanying motion papers, plaintiffs respectfully request that the Court enter the order to show cause for a preliminary injunction with temporary restraining order requiring defendant FilmOn to suspend its streaming of the plaintiffs' television broadcasts pending a final adjudication of this matter.

                                                 Respectfully yours,

                                                 Peter L. Zimroth

Enclosures

cc:    Scott Zarin, Esq.