UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CBS BROADCASTING INC.,<br>NBC STUDIOS, INC.,<br>UNIVERSAL NETWORK TELEVISION, LLC,<br>NBC SUBSIDIARY (KNBC-TV), INC.<br>TWENTIETH CENTURY FOX FILM<br>CORPORATION,<br>FOX TELEVISION STATIONS, INC.,<br>ABC HOLDING COMPANY INC.,<br>and DISNEY ENTERPRISES, INC.,<br>     Plaintiffs,<br><br>v.<br><br>FILMON.COM, INC.,<br>     Defendant. | Case No. 1:10-cv-7532-NRB |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
APPLICATION FOR AN ORDER TO SHOW CAUSE FOR A PRELIMINARY
INJUNCTION AND TEMPORARY RESTRAINING ORDER**

Peter L. Zimroth
ARNOLD & PORTER LLP
399 Park Avenue
New York, New York
(212) 715-1000
*peter.zimroth@aporter.com*

- and -

Robert Alan Garrett
Hadrian R. Katz
C. Scott Morrow
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004
(202) 942-5000
*robert.garrett@aporter.com*
*hadrian.katz@aporter.com*
*scott.morrow@aporter.com*

*Counsel for Plaintiffs*

November 9, 2010

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................................... 1

FACTUAL BACKGROUND ............................................................................................ 4

ARGUMENT .................................................................................................................. 5

I.   PLAINTIFFS HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE
     MERITS ................................................................................................................... 6

     A.   FilmOn's Unauthorized Streaming of TV Programming Over Mobile Telephone
          Systems and the Internet Infringes Plaintiffs' Exclusive Public Performance
          Rights ............................................................................................................. 6

     B.   FilmOn Cannot Meet its Burden of Establishing a Proper Defense to its Massive
          Infringement of Plaintiffs' Public Performance Rights .......................................... 7

II.  PLAINTIFFS WILL SUFFER IRREPARABLE INJURY IN THE ABSENCE OF A
     TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION ........... 9

III. THE BALANCE OF HARDSHIPS BETWEEN PLAINTIFFS AND DEFENDANT
     TIPS DECIDEDLY IN THE PLAINTIFFS' FAVOR ................................................... 12

IV.  A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
     WOULD NOT HARM THE PUBLIC INTEREST ....................................................... 13

CONCLUSION .............................................................................................................. 15

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **CBS BROADCASTING INC.,**<br>**NBC STUDIOS, INC.,**<br>**UNIVERSAL NETWORK TELEVISION, LLC,**<br>**NBC SUBSIDIARY (KNBC-TV), INC.**<br>**TWENTIETH CENTURY FOX FILM**<br>**CORPORATION,**<br>**FOX TELEVISION STATIONS, INC.,**<br>**ABC HOLDING COMPANY INC.,**<br>**and DISNEY ENTERPRISES, INC.,**<br>        **Plaintiffs,**<br><br>**v.**<br><br>**FILMON.COM, INC.,**<br>        **Defendant.** | **Case No. 1:10-cv-7532-NRB** |

Plaintiffs respectfully submit the following memorandum in support of their application for an order to show cause as to why the Court should not issue a preliminary injunction and temporary restraining order against defendant FilmOn.com, Inc. ("FilmOn") pending a final adjudication of the merits of plaintiffs' claims in this matter.

## PRELIMINARY STATEMENT

On November 2, 2010, FilmOn announced that it would begin offering to anyone in the world – with a mobile device or a computer connected to the Internet – the "first" ever service with unlimited, free, real-time access to the signals of several broadcast television stations and the copyrighted programming on those stations, including the stations and programming owned by plaintiffs and their affiliates. None of the plaintiffs or anyone else has authorized FilmOn to make any use whatsoever of the signals of plaintiffs' broadcast stations or any of plaintiffs' copyrighted broadcast programming.

Each and every day, FilmOn streams hundreds of copyrighted programs belonging to plaintiffs and others over the Internet where they are available to millions of individuals worldwide with Internet-accessible computers or mobile devices – all without the authorization of plaintiffs and other affected copyright owners; all in direct, unfair competition with plaintiffs' licensed services; all without concern for the vulnerability of the programming to further unauthorized viral reproduction and distribution; all for FilmOn's commercial gain; and all in open and notorious violation of the exclusive rights of plaintiffs and other copyright owners under Section 106 (4) of the Copyright Act, 17 U.S.C. § 106 (4), to perform publicly (and to authorize others to perform publicly) their copyrighted works.

Unless restrained by this Court, the loss of control over the distribution of plaintiffs' broadcast signals and copyrighted programming, the preemption of plaintiffs' opportunities to license content over new media, the misappropriation of plaintiffs' ability to develop domestic and foreign markets, and the other unlawful conduct of FilmOn threaten plaintiffs with enormous and irremediable losses. Such losses cannot be compensated because damages cannot be measured accurately and because FilmOn may never be able to pay the significant statutory damages authorized by the Copyright Act for what will amount to willful infringement of thousands of separate works. *See* 17 U.S.C. § 504 (c). Moreover, unless restrained, FilmOn's model for piracy will be imitated by others, further exacerbating the harm to plaintiffs.

## FACTUAL BACKGROUND

Plaintiffs and their affiliates are: (1) leading broadcast television networks; (2) major producers of copyrighted television programming; and (3) owners of broadcast television stations licensed to serve the Los Angeles, California television market. FilmOn says it "was founded in March 2009 by a Berlin-listed public company (2FOA-BER) and is operated

independently by a dedicated U.S. management team with offices in Los Angeles and London." Declaration of Martin D. Franks ("Franks Decl."), Ex. 2.

FilmOn commenced its infringing service in late September 2010 by providing subscribers online access to programming broadcast on several Los Angeles television stations, including stations and programming owned by plaintiffs. FilmOn captured the signals of these stations in Los Angeles, retransmitted the signals to its servers, and then streamed the signals over the Internet to those who registered and agreed to pay a monthly fee of at least $9.95 to view programming on a downloadable player. A press release issued by FilmOn on September 27, 2010 advertised "over 30 premium free to air television channels . . . including CBS, ABC, NBC, . . . FOX . . ." as well as other channels, including those with hard core adult programming. *See* Franks Decl., Ex. 1[1]

Within days after FilmOn commenced its unauthorized service, plaintiffs filed the present copyright infringement action. Initially, FilmOn's service was available only sporadically and intermittently and appeared to attract relatively few paying subscribers. *See* Franks Decl., ¶ 8. On November 2, 2010, however, FilmOn announced a major reorientation and expansion of its service. FilmOn's service is now freely available to anyone anywhere in the world on FilmOn's Web site (www.filmon.com) and over mobile telephones, iPad tablets, and other wireless devices. According to a FilmOn press release:

> FilmOn.com, the first online High Definition Television provider, announced today the launch of FilmOn Mobile; the first free, fully functional live television platform for mobile devices including the

---

[1] FilmOn launched its service shortly after ivi, Inc. commenced a similar and highly-publicized infringing service. Plaintiffs here, along with others, have filed a separate copyright infringement action against ivi. *See WPIX, Inc. v. ivi, Inc.*, Case 1:10-cv-07415-NRB (S.D.N.Y., filed Sept. 21, 2010). There is pending in that matter a fully-briefed motion for temporary restraining order and preliminary injunction.

iPad™, Android™ and BlackBerry™ models. FilmOn Mobile includes programming from all major network TV stations and select cable channels as well as FilmOn's own branded channels. The service is available at www.filmon.com.

FilmOn Mobile does not require an application download. It works seamlessly with the built-in devices' media players using FilmOn's proprietary encrypted service to broadcast live television in HD over a basic 3G connection.

The service currently utilizes Los Angeles and European based affiliates. Additional major cities local affiliate channels including New York, Chicago, Miami, Dallas, Houston and Seattle will be populating the platform in the coming weeks.

The free FilmOn Mobile platform provides HD live viewing of all major networks and free television using Los Angeles and European feeds. The channels include:

| | |
|---|---|
| ABC (KABC) | KCAL |
| CBS (KCBS) | Azteca America (KAZA) |
| NBC (KNBC) | Telemundo (KVEA) |
| The CW (KTLA) | Univision (KMEX) |
| FOX (KTTV) | Universal Sports |
| PBS (KOCE) | KCAL |
| ION Television (KPXN) | Azteca America (KAZA) |
| My Network TV (KCOP-TV) | Telemundo (KVEA) |

Franks Decl., Ex. 2. Demonstrations of how FilmOn's service operates may be found at http://www.youtube.com/watch?v=7myr9_Dm1Lc and http://www.youtube.com/watch?v=GfIhXw6E9xs&NR=1.

FilmOn's press release also identifies several channels of non-broadcast programming for which FilmOn has apparently negotiated distribution rights. FilmOn, however, has not obtained authorization from any of the plaintiffs to make any use whatsoever of their broadcast signals or their copyrighted broadcast programming. Plaintiffs have licensed various services (such as

Apple iTunes, Amazon.com and Netflix) to stream plaintiffs' programming over the Internet and to mobile devices, pursuant to negotiated terms and conditions covering a range of standard business considerations – including, for example, marketplace compensation, signal security, quality of transmissions, timing of content availability, geographic restrictions and scope of exclusivity. *See* Franks Decl., ¶¶ 16, 20, 28. FilmOn's unlawful conduct significantly interferes with the legitimate marketplace for plaintiffs' intellectual property. *See generally* Franks Declaration; *infra* pages 8-10.

## ARGUMENT

A temporary restraining order and preliminary injunction should issue in a copyright infringement case under 17 U.S.C. § 502 where the plaintiff shows (1) "either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make a fair ground for litigation and a balance of hardships tipping decidedly in [plaintiff's] favor"; (2) "that [plaintiff] is likely to suffer irreparable injury in the absence of an injunction"; (3) that "the balance of hardships [between the plaintiff and defendant] tips in the plaintiff's favor"; and (4) "that the public interest would not be disserved by the issuance of a preliminary injunction." *Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010) (internal citations and quotations omitted); *see Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992) (standards for issuing a temporary restraining order are the same as those for issuing a preliminary injunction).

While the *Salinger* court adopted a legal standard consistent with the "traditional principles of equity" required by the Supreme Court in *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006), it acknowledged that the Second Circuit Court of Appeals "has nearly always issued injunctions in copyright cases as a matter of course upon a finding of likelihood of success

on the merits." 607 F.3d at 76. The court indicated that these historical precedents were

instructive, and quoted favorably from Chief Justice Roberts's concurring opinion in *eBay*:

> [C]ourts have granted injunctive relief upon a finding of
> infringement in the vast majority of patent cases. This "long
> tradition of equity practice" is not surprising, given the difficulty
> of protecting a right to *exclude* through monetary remedies . . . .
> When it comes to discerning and applying those standards, in this
> area as others, a page of history is worth a volume of logic.

*Id.* at 82 (*quoting* 547 U.S. at 395).

I.   **PLAINTIFFS HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS**

    A.   **FilmOn's Unauthorized Streaming of TV Programming Over Mobile Telephone Systems and the Internet Infringes Plaintiffs' Exclusive Public Performance Rights**

To establish infringement under the Copyright Act, a plaintiff must show "(1) ownership

of a valid copyright, and (2) copying of constituent elements of the work that are original."

*Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 693, 699 (2d Cir. 1998) (citations omitted).

"The word 'copying' is shorthand for the infringing of any of the copyright owner's five

exclusive rights described in § 106." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir.

2010) (citation and internal quotation marks omitted). These rights include the exclusive rights

to perform copyrighted works publicly and to authorize others to do the same. *See* 17 U.S.C. §

106 (4).

Plaintiffs are copyright owners of some of the most valuable and well-recognized

programming aired by television stations in this country, including content aired on the stations

that FilmOn is streaming (and intends to stream) over mobile telephone systems and the Internet

without authorization. *See* Declaration of Scott Morrow ("Morrow Decl."), Ex. 1. Moreover, it

is well-established that such streaming constitutes a public performance within the meaning of

Section 106 (4) of the Copyright Act, 17 U.S.C. § 106 (4), and thus requires a license.  *See United States v. ASCAP*, 2010 WL 3749292, at *5 (2d Cir. 2010); *United States v. ASCAP*, 485 F. Supp. 2d 438, 441 (S.D.N.Y. 2007).

In a similar case, a court entered a temporary restraining order and preliminary injunction against another service that sought to stream over the Internet, without authorization, the signals and programming of broadcast television stations licensed to Buffalo, New York.  The court held:

> [The record] shows that plaintiffs are likely to succeed in showing that defendants are unlawfully publicly performing plaintiffs' copyrighted works in the United States.  Defendants do so by transmitting (through use of "streaming" technology) performances of the works to the public by means of the telephone lines and computers that make up the Internet.  17 U.S.C. Section 101.  This activity violates plaintiffs' rights to perform their works publicly and to authorize others to do so.

*Twentieth Century Fox Film Corp., v. iCraveTV*, 2000 WL 255989, at *7 (W.D. Pa. 2000).

For more than a decade since the *iCraveTV* decision, it has been clear that services such as FilmOn may not stream broadcast television signals and programming over the Internet without obtaining authorization of affected copyright owners.  *See* Statement of Marybeth Peters, Register of Copyrights, Before the House Subcommittee on Courts and Intellectual Property, 106th Cong., 2d Sess., (June 15, 2000) (recognizing that services streaming broadcast television programming over the Internet require a license) (Morrow Decl., Ex. 2); Register of Copyrights, Satellite Home Viewer Extension and Reauthorization Act Section 109 Report to Congress at xii, 181-89 (June 2000) (same) (Morrow Decl., Ex. 3).

### B.   FilmOn Cannot Meet its Burden of Establishing a Proper Defense to its Massive Infringement of Plaintiffs' Public Performance Rights

On a motion for a temporary restraining order in a copyright infringement action, a defendant bears the burden of establishing that it has a lawful defense to infringement.  *See Patry*

*on Copyrights,* § 10:9.50 (2010) (*citing Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,* 546 U.S. 418, 429 (2006)); *Lennon v. Premise Media Corp.*, 556 F. Supp. 2d 310, 320 (S.D.N.Y. 2008).   FilmOn cannot meet that burden; it has no proper defense to its massive infringement of plaintiffs' copyrighted works.

While FilmOn has suggested in the press that it may assert the "compulsory license" accorded "cable systems" in Section 111 of the Copyright Act, 17 U.S.C. § 111, Section 111 has no applicability whatsoever to FilmOn's activities and provides no basis for excusing FilmOn's infringement.   FilmOn cannot qualify for the Section 111 license unless it meets the threshold definition of "cable system" in Section 111 (f) which provides:

> A "cable system" is a facility, *located in any State, territory, trust territory, or possession,* that in whole or in part receives signals transmitted or programs broadcast by one or more television broadcast stations licensed by the Federal Communications Commission, and *makes secondary transmissions of such signals or programs by wires, cables, microwave, or other communications channels to subscribing members of the public who pay for such service.* For purposes of determining the royalty fee under subsection (d)(1), two or more cable systems in contiguous communities under common ownership or control or operating from one headend shall be considered as one system.

17 U.S.C. § 111 (f) (3) (emphasis added).   As the italicized language makes clear, FilmOn is not a "cable system" entitled to the Section 111 cable compulsory license because, among other things, it does not offer its service "to subscribing members of the public who pay for such service[s]"; it does not and cannot confine its Internet-based service to the United States; and it does not offer that service solely over "wires, cable, microwave or other communications channels" but instead offers that service over wireless devices and the Internet.

## II.   PLAINTIFFS WILL SUFFER IRREPARABLE INJURY IN THE ABSENCE OF A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiffs are broadcasters and content owners; their businesses depend on retaining the ability to control the time, place, manner, and quality of their programming transmissions and the use of their copyrighted content so they can obtain a fair market return on their substantial investments.   The plaintiffs possess "a property interest in the copyrighted material," *see Salinger*, 607 F.3d at 81, and will suffer harm to that "legal interest" that "cannot be remedied after a final adjudication." *Id.; see New Era Publications Int'l, ApS v. Henry Hold & Co.*, 695 F. Supp. 1493, 1526 (S.D.N.Y. 1988) ("the justification of the copyright law is the protection of the *commercial* interest of the artist/author") (emphasis in original).

As the accompanying declarations establish, FilmOn's unauthorized streaming of plaintiffs' broadcast signals and programming over the Internet and to mobile devices threatens to injure the plaintiffs and diminish the value of their businesses and their intellectual property in multiple serious respects:

- *Destruction in Value of Licensed Programming Content.*   FilmOn's unauthorized streaming of plaintiffs' television programming content over telephone networks and the Internet significantly undermines the value of such content – content for which cable systems, satellite services and other multichannel video programming distributors pay significant sums for the right to transmit to their subscribers. *See* Franks Decl., ¶¶ 9-11, 14, 22-23, 26-27.

- *Disruption of Advertising Models/Loss of Revenue.*   FilmOn's conduct threatens broadcasters with major losses in advertising revenue. A first run television program is aired at one specific time, rerun at other specific times in other time zones, and then, frequently, made available over the Internet or through other distribution channels at other specific times. FilmOn is frustrating this lawful control, including by streaming West Coast network stations enabling, for example, New York viewers to watch programs at times other than when they are available from local broadcasters. This significantly disrupts advertising models, as New York-targeted advertising will not be viewed by New York viewers who watch the FilmOn Los Angeles station feed. *See* Franks Decl., ¶¶ 17-18.

- *Interference with Distribution Agreements.*   Content owners enter into distribution arrangements with broadcasters that typically limit the times, geographical areas and

mode of permitted distribution. For example, distribution online is typically not permitted and the rights will not be cleared for that purpose. Broadcasters in turn enter into distribution agreements with local cable systems and other multichannel video programming distributors that include the right to retransmit their broadcast programming simultaneously. FilmOn's disruption of those legitimate controls is likely to diminish the value for both the licensor and licensee. By offering its service without authorization from plaintiffs and without the kind of limitations commonly included in arm's-length distribution agreements, FilmOn undermines licensees that pay for the right to broadcast and retransmit plaintiffs' content and signals. Such conduct diminishes the value of the content to licensees, will undercut plaintiffs' relationships with licensees and will undermine plaintiffs' ability to generate distribution revenue in the future. This ultimately jeopardizes the ability of content creators to invest in new content for the public to enjoy. *See* Franks Decl., ¶¶ 15-17, 22-23, 27-28.

- *Interference with Licensed Web Sites.* Plaintiffs typically make content available after its initial broadcast on their own Web sites for specific time periods, and license the content to other Web services for other specific time periods. FilmOn's unauthorized Internet and mobile phone services compete with both of these practices, and frustrate the content owners' temporal controls. Moreover, plaintiffs go to great lengths to ensure that distribution of programming over the Internet is securely protected, such as negotiating for digital rights management technology and access controls. FilmOn's system enables users to download unencrypted content, allowing for further uncontrolled distribution. *See* Franks Decl., ¶¶ 15-18, 25-27.

- *Disruption of Foreign Markets.* Distribution of United States programming to foreign countries is controlled by multiple agreements, and subject to foreign legal systems, exclusivity windows, and other local customs and practices. Foreign markets are a significant source of income for the plaintiffs, and FilmOn's unlawful action threatens this income source. By brazenly retransmitting plaintiffs' local Los Angeles programming into foreign markets without any regard for the legitimate licensees and licensors that play by the rules, FilmOn is causing the same type of harm as in the domestic market. *See* Franks Decl., ¶¶ 9, 16, 24, 27.

- *Loss of control over content and viral infringement.* By distributing plaintiffs' programming in digital form over the Internet – without plaintiffs having any say about the use of security and copy protection measures – FilmOn exposes plaintiffs to virtually unlimited piracy. Once digital copies are available and released to the public on the Internet, vast viral infringement routinely follows. Plaintiffs would have no way of tracking who made copies of programming that FilmOn put on the Internet, how many copies were made, where those copies are, or to otherwise track their further copying and distribution on the Internet. *See* Franks Decl., ¶¶ 10, 12-14.

- *Impact upon over-the-air broadcasting.* Owners of popular programming may discontinue licensing that programming to over-the-air broadcasters (as opposed to non-broadcast networks such as HBO, USA, ESPN and TNT) if licensing over-the-air broadcasters results in the loss of control over distribution of their programming, viral copying of their programming, and their inability to secure a fair return on their

investment. This, in turn, will affect the overall quality and availability of programming on over-the-air broadcast stations, which is the sole source of television content relied on by an important segment of the public. *See* Franks Decl., ¶¶ 10-14, 25-27.

The courts have recognized several additional considerations that support a finding of irreparable harm here.

*First,* injunctive relief is necessary because of the difficultly in quantifying the damages and lost profits associated with FilmOn's infringement. *See Salinger*, 607 F.3d at 81 (explaining that even though irreparable harm cannot be presumed, "[h]arm might be irremediable, or irreparable, for many reasons, including that a loss is difficult to replace or difficult to measure, or that it is a loss that one should not be expected to suffer. . . . [C]ourts have tended to issue injunctions [in the context of copyright infringement cases] because 'to prove the loss of sales due to infringement is . . . notoriously difficult.'"). There is no way to quantify adequately the lost revenue from advertising and from licensing of plaintiffs' content as a result of FilmOn's pilfering of consumers from legitimate distribution channels. Moreover, it will be difficult if not impossible to assess adequately the diminished value of plaintiffs' content to authorized licensees if unauthorized distribution is allowed to proceed unabated. *See Pearson Educ., Inc. v. Vergara*, 2010 WL 3744033, at *4 (S.D.N.Y. 2010) (holding in context of a copyright infringement case decided after *Salinger* that irreparable harm element was satisfied because plaintiff "should not be expected to suffer a decline in . . . sales and profits – an injury difficult to quantify – owing to [defendant's] infringement").

*Second,* a defendant's inability to compensate the plaintiff for the damages it inflicted is a factor in determining whether preliminary injunctive relief is warranted. *See Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir. 1971) (considering the "unlikelihood that defendant . . . would, in any event, be able to satisfy a substantial damage award" to support a finding of irreparable harm); *Hoxworth v. Blinder, Robinson & Co.*, 903

- 11 -

F.2d 186, 206-07 (3d Cir. 1990) (noting that a defendant's inability to satisfy a judgment can constitute the sort of irreparable injury necessitating injunctive relief); *Tri-State Generation and Transmission Ass'n, Inc. v. Shoshone River Power, Inc.,* 805 F.2d 351, 355 (10th Cir. 1986) ("Difficulty in collecting a damage judgment may support a claim of irreparable injury").

Plaintiffs would be entitled to recover statutory damages of anywhere between $200 (innocent infringement) and $150,000 (willful infringement) per copyrighted work infringed. *See* 17 U.S.C. § 504 (c) (2). FilmOn is currently streaming hundreds of copyrighted programs each and every day (and plans to stream even more by adding stations from additional markets in the coming weeks). As a startup operation, FilmOn appears unlikely to be able to satisfy such a damages award. Accordingly, economic remedies will not suffice and injunctive relief is necessary in these circumstances.

*Finally*, plaintiffs have no adequate remedy at law where infringing activity is likely to continue in the absence of an injunction. FilmOn is currently unlawfully streaming plaintiffs' broadcast television stations and copyrighted programming worldwide to potentially millions of Internet users; and FilmOn has given every indication by its recent press statements that it plans not only to continue doing so but also to expand its services by streaming broadcast stations in several other cities. *See Pearson*, 2010 WL 3744033, at *4; *Microsoft Corp. v. ATEK 3000 Computer, Inc.*, 2008 WL 2884761, at *5 (E.D.N.Y. 2008) (plaintiff alleging unauthorized distribution of software demonstrated that there was no adequate remedy of law because "there is no assurance in the record against defendant's continued violation of plaintiff's copyrights").

## III.   THE BALANCE OF HARDSHIPS BETWEEN PLAINTIFFS AND DEFENDANT TIPS DECIDEDLY IN THE PLAINTIFFS' FAVOR

Defendant FilmOn would not face any harm about which it can complain justifiably if required to cease streaming plaintiffs' copyrighted programming pending final adjudication of

- 12 -

the substantial copyright infringement claims presented here. FilmOn's retransmission business is not an established operation that would suffer disruption – it began offering its service just a few weeks ago, apparently stopped, and has re-launched it only last week. Moreover, nothing in the relief sought by plaintiffs would require FilmOn to cease delivering any of the programming for which it presumably has negotiated content owner consent, including its adult programming. Because the defendant will not suffer any real harm from an injunction prior to a full adjudication on the merits, and because plaintiffs will suffer substantial and irreparable harm, including loss of control over distribution of their intellectual property, reputational damage and loss of audience and revenue during the period of FilmOn's continued infringement, the balance of hardships weighs heavily in favor of plaintiffs.

## IV.   A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION WOULD NOT HARM THE PUBLIC INTEREST

Courts considering requests for injunctive relief in copyright cases "must consider the public's interest." *Salinger*, 607 F.3d at 82. "The public interest that copyright law is designed to promote is the wide availability of creative works." *Matthew Bender & Co., Inc. v. West Publishing Co.*, 240 F.3d 116, 124 n.8 (2d Cir. 2001). As the Second Circuit Court of Appeals has noted:

> The object of copyright law is to promote the store of knowledge available to the public. But to the extent it accomplishes this end by providing individuals a financial incentive to contribute to the store of knowledge, the public's interest may well be already accounted for by the plaintiff's interest.

*Salinger*, 607 F.3d at 82. The Copyright Act thus serves the public interest by providing incentives for copyright owners to create, invest in, and disseminate creative content.

Defendant FilmOn unlawfully transmits copyrighted television broadcasts out of their intended local markets, unsecured over the Internet, to a worldwide audience   all without

authorization from the content owners or their licensees. In so doing, FilmOn misappropriates plaintiffs' copyrighted content without regard for the exclusive rights granted by law to its creators or the negotiated terms of contracts governing its distribution. FilmOn subverts the rules imposed by Congress and the relevant regulatory agencies to govern retransmissions of such content and to protect national and local broadcasters from misuse of their programming and unfair competition by duplicating broadcasts from other markets.

In sum, FilmOn's services (and the proliferation of similar services that are likely to emerge if FilmOn is not enjoined) threaten virtually every income stream that plaintiffs derive from the creation and dissemination of copyrighted television programming. By doing so, FilmOn undermines the core public interest that copyright law is intended to protect, and encourages content owners to license their product for distribution on media platforms other than free broadcast television to ensure that they retain control over Internet distribution, which ultimately harms a significant segment of the American public that relies on free broadcast television as its sole source of video programming. An injunction prohibiting FilmOn from continuing to stream plaintiffs' programming over telephone systems and the Internet without obtaining prior consent therefore serves the public interest and the underlying policy of the Copyright Act. *See Salinger*, 607 F.3d at 82; *accord, L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486, 492 (2d Cir. 1976) (failure to enter injunction protecting copyrighted works would frustrate the constitutional demand of "promoting progress in the arts"); *Warner Bros. Entm't Inc. v. Carsagno*, 2007 WL 1655666, at *6 (E.D.N.Y. 2007) ("the public interest would not be disserved by a permanent injunction, as there is a greater public benefit in securing the integrity

of [plaintiff's] copyrights than in allowing [defendant] to make [the] copyrighted material available to the public").

## **CONCLUSION**

For the foregoing reasons, the plaintiffs are entitled to entry of an order to show cause why the Court should not grant a preliminary injunction with temporary restraining order, pursuant to Rule 65 of the Federal Rules of Civil Procedure, restraining defendant FilmOn, Inc. and its officers, employees, agents, and those in privity with them, from streaming over mobile telephone systems and/or the Internet the broadcast television programming of the plaintiffs during the pendency of this litigation.

Respectfully submitted,

By: _Peter L. Zimroth_

Peter L. Zimroth
ARNOLD & PORTER LLP
399 Park Avenue
New York, New York
(212) 715-1000
*peter.zimroth@aporter.com*

- and -

Robert Alan Garrett
Hadrian R. Katz
C. Scott Morrow
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004
(202) 942-5000
*robert.garrett@aporter.com*
*hadrian.katz@aporter.com*
*scott.morrow@aporter.com*

*Counsel for Plaintiffs*

Dated:  November 9, 2010