UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CBS BROADCASTING, INC.,<br>NBC STUDIOS, INC.<br>UNIVERSAL NETWORK TELEVISION, LLC<br>NBC SUBSIDIARY (KNBC-TV), INC.<br>TWENTIETH CENTURY FOX FILM<br>CORPORATION,<br>FOX TELEVISION STATIONS, INC.,<br>ABC HOLDIN COMPANY, INC.,<br>and DISNEY ENTERPRISES, INC., | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | |
| | : | Case No.<br>10-CV-7532-NRB |
| Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| FILMON.COM, INC., | : | |
| | : | |
| Defendant. | : | |

### Defendant FilmOn's Opposition to Plaintiffs'
### Motion for Temporary Restraining Order
### and Preliminary Injunction

COMES NOW Defendant FilmOn.com, Inc. ("FilmOn"), through its

attorneys Zarin & Associates P.C., with this memorandum of law in opposition to

Plaintiffs CBS Broadcasting, Inc., NBC Studios, Inc., Universal Network Television,

LLC, NBC Subsidiary (KNBC-TV), Inc., Twentieth Century Fox Film Corp., Fox

Television Stations, Inc., ABC Holding Company, Inc. and Disney Enterprises, Inc.

("Networks") motion for temporary restraining order and/or preliminary injunction.

## Table of Contents

I.     Introduction ................................................................................................................. 3

II.    Argument .................................................................................................................... 4

   A.    Heightened Preliminary Injunction Standard Applies ........................................ 4

   B.    The Networks Do Not Have a Substantial Likelihood of Success ..................... 4

      1.    FilmOn Is Exempt From Copyright Infringement Liability As A 'Cable System' Under 17 U.S.C. §111(c) ............................................................................... 5

      2.    FilmOn Is Exempt From Copyright Infringement Liability As A 'Carrier' Under 17 U.S.C. §111(a)(3) ......................................................................................... 5

   C.    The Balance of the Hardships Tips Decidedly In Favor of FilmOn ................ 10

   D.    The Networks Would Not Suffer Irreparable Harm ...................................... 10

III.   Conclusion ............................................................................................................... 13

## I.    Introduction

FilmOn is a service which, through the Internet, enables its subscribers, by using a computer or mobile device, to view network television programs which are broadcast by the Networks through their local affiliate stations, and to view television programs which are broadcast by FilmOn and local cable stations. (David Dec., ¶3) All FilmOn viewing is in real-time; that is, it is streamed live and is not delayed or available for viewing before or after the live broadcast by the network affiliate which broadcasts network programs in local regional markets. (David Dec., ¶4)

FilmOn's network program service operates by providing a platform which captures digital television signals broadcast for free by the Networks over-the-air, and by making these signals accessible to FilmOn subscribers through the Internet. (David Dec., ¶5)  FilmOn's platform is accessible to subscribers on their computers or mobile devices through FilmOn's website.  The digital signals captured by FilmOn are broadcast by the Networks over-the-air for free.  In essence, therefore, FilmOn merely act as conduit for the digital signals which the Networks broadcast over-the-air free of charge. (David Dec., ¶6)

All subscribers who avail themselves of the access FilmOn provides to local cable station programs must pay a fee to view these programs, but subscribers who simply take advantage of FilmOn's access to network programs need not pay any fee to view these programs. (David Dec., ¶¶7-9)

FilmOn began to offer its service in the United States in late September. (David Dec., ¶27)  Shortly thereafter, the Networks filed the instant suit for copyright

3

infringement. On November 9, 2010, the Networks filed a motion for a temporary

restraining order and/or a preliminary injunction.

## II. Argument

### A. Heightened Preliminary Injunction Standard Applies

A party seeking a preliminary injunction must demonstrate (1) that it will be
irreparably harmed in the absence of an injunction, *and* (2) either (a) a
likelihood of success on the merits or (b) sufficiently serious questions going
to the merits to make them a fair ground for litigation and a balance of
hardships tipping decidedly in its favor. A more rigorous standard that
requires a 'clear' or 'substantial' showing of likelihood of success, rather than
simply a likelihood of success, applies where an injunction will alter, rather
than maintain, the status quo. That is, the 'typical' preliminary injunction is
prohibitory and seeks only to maintain the status quo. In contrast, a
mandatory injunction 'is said to alter the status quo by commanding some
positive act.'

*Yoko Ono Lennon v. Premise Media Corp.*, 556 F.Supp.2d 310, 318-19 (S.D.N.Y. 2008)

(emphasis supplied)

The Networks are seeking a *mandatory* injunction, requesting the Court to alter

the status quo. Currently, FilmOn offers its subscribers live access to network

programs. The Networks request the Court to prohibit FilmOn from making these

programs accessible in the future. Consequently, the Networks are subject to the

higher 'clear' or 'substantial' likelihood of success standard.

### B. The Networks Do Not Have a Substantial Likelihood of Success

The Networks cannot demonstrate a 'substantial' or 'clear' likelihood of

success on the merits of their copyright infringement claim.

### 1.      FilmOn Is Exempt From Copyright Infringement Liability As A 'Cable System' Under 17 U.S.C. §111(c)

In their motion, the Networks contend that, because FilmOn is not a 'cable system' within the meaning of 17 U.S.C. §111(f), it is not exempt from liability for copyright infringement under §111(c) of the Copyright Act. In *WPIX, Inc. v. IVI, Inc.*, Case No. 10-CV-7415, a case currently pending in this Court involving many of the same Network plaintiffs as in this suit and a defendant which offers a similar Internet based network television program viewing service as FilmOn, the Networks have also moved for a temporary restraining order and/or a preliminary injunction wherein they have made substantially the same argument as the one they make in this case.[1]  FilmOn incorporates by reference the response memorandum to the Networks' motion filed by the defendant in the *IVI* case. See (Exhibit)

### 2.      FilmOn Is Exempt From Copyright Infringement Liability As A 'Carrier' Under 17 U.S.C. §111(a)(3)

Additionally, however, FilmOn relies on 17 U.S.C. §111(a)(3), which also exempts it from liability for copyright infringement because it is a 'carrier', within the meaning of 17 U.S.C. §111(a)(3), which is permitted to retransmit network programs.

Under this provision of the Copyright Act,

(a)      The secondary transmission of a performance or display of a work embodied in a primary transmission is not an infringement of a copyright if:

(3)      the secondary transmission is made by any carrier who has no direct or indirect control over the content or selection of the primary transmission or over the particular recipients of the secondary transmission, and whose activities with respect to the secondary transmission consist solely of providing wires, cables, or other communications channels for the use of others.

---

[1]      The *IVI* case is also currently pending before this Court.

5

17 U.S.C. §111(a)(3). As the Eighth Circuit Court of Appeals explained in *Hubbard*

*Broadcasting, Inc. v. Southern Satellite Systems, Inc.*,

> to qualify for the exemption [from copyright liability], five elements must be established:
>
> 1.     There must be a "secondary transmission of a primary transmission";
>
> 2.     made by a "carrier";
>
> 3.     that has no "direct or indirect control over the content or selection of the primary transmission";
>
> 4.     that has no "direct or indirect control over the particular recipients of the secondary transmission; and
>
> 5.     "whose activities with respect to the secondary transmission consist solely of providing wires, cables, or other communications channels for the use by others."

*Hubbard Broadcasting, Inc. v. Southern Satellite Systems, Inc.*, 777 F.2d 393, 401 (8th Cir.

1985).

FilmOn's service satisfies all five of these elements. First, FilmOn transmits

the digital signals of the Networks. (David Dec., ¶¶5-6) The Networks' signals are

'primary transmissions' and FilmOn's transmission of those signals is a 'secondary

transmission'. Second, FilmOn has no direct or indirect control over the content or

selection of the 'primary transmission'. FilmOn subscribers can only view the

network programs exactly as they are broadcast by the Networks, including the

commercials. (David Dec., ¶19) *Hubbard Broadcasting, Inc.*, 777 F.2d at 402-403 ("[The

carrier] exercises no control over the selection and broadcast of the particular

programming or nonprogramming material transmitted by WTBS. These decisions

are made entirely by WTBS."); *Eastern Microwave, Inc. v. Doubleday Sports, Inc.*, 691 F.2d

125, 130 (2d Cir. 1982) ("To hold that 'selection' means station selection would thus

emasculate the exemption provision of the Act with respect to immediate carriers, in

derogation of the duty of upholding statutory provisions not contrary to reason,

logic, common sense or the Constitution.")  Third, FilmOn has no direct or indirect

control over the recipients of their 'secondary transmission' of the Networks' signal.

Its subscribers may view whatever network programs they choose without any

restrictions or requirements by FilmOn. (David Dec., ¶¶3, 4, 8, 9); *Eastern Microwave,*

Inc., 691 F.2d at 131 ("That [the carrier] renders its services to certain CATV systems

and not others does not itself constitute, however, any control, direct or indirect, over

particular recipients.").  Fourth, FilmOn's sole act is to provide access to the

Networks' signals to its subscribers through the Internet, on its website, for their use.

(David Dec., ¶¶5-6)  The Internet is another 'communication channel' within the

meaning of the statute. *Eastern Microwave, Inc.*, 691 F.2d at 131 ("[The carrier] provides

its single satellite transponder for use of its CATV customers in acquiring the signals

of necessarily one originator, i.e. WOR-TV.")

     Finally, FilmOn is a 'carrier' within the meaning of 17 U.S.C. §111(c)(3).  In

*Hubbard Broadcasting*, the district court, which was later affirmed by the Court of

Appeals, explained that:

> Congress clearly intended that term [carrier] to be construed broadly
> when it said "*any* carrier."  . . . The court is not persuaded that Congress
> intended to restrict the exemption to traditional carriers or even to new types
> of carriers only if they exhibited the total passivity historically associated with
> traditional carriers.  A similar argument was made and rejected in *Eastern*
> *Microwave*, where the Second Circuit said, "though Doubleday insist on

comparing EMI with the telephone company, the statute speaks in terms of 'any carrier' . . . and EMI is licensed by the FCC as a common carrier . . ."

*Hubbard Broadcasting, Inc. v. Satellite Systems,Inc.*, 593 F. Supp. 808, 817 (D. Minn.

1984) (citations omitted).  Moreover, in *National Football League v. Insight*

*Communications Corp.*, the court stated that:

> Congress, in enacting Section 111(a)(3), did not define the term 'carrier' in that section.  But the current version is now (and was at all relevant times referred to in the complaint and amended complaint) in its third iteration.  As one court has observed
>
>> Furthermore, Congress in the 1976 Act intended to *expand* the coverage of the exemption beyond the traditional common carrier concept, rather than limit it as plaintiff suggests.  While the exemption was originally for 'common carriers,' it was later expanded to cover new types of carriers such as 'a common, contract or special carrier' and finally broadened in the 1976 Act to '*any carrier*,' evidencing Congress' intent not to limit the class to a particular type of carrier. (Emphasis supplied).

*National Football League v. Insight Communications Corp.*, 158 F. Supp.2d 124, 131-32 (D.

Mass. 2001) (citations omitted).

FilmOn transmits the Networks' digital signals to its subscribers free of

charge.  As such, FilmOn is a 'carrier' within the broad meaning of that term as it is

used in 17 U.S.C. §111(a)(3).

On similar facts, the *Insight Communications* court reached this very conclusion.

In doing so, however, it noted that another court, *Infinity Broadcasting Corp. v. Kirkwood*,

had reached a contrary conclusion.

In *Infinity Broadcasting*, the court rejected the defendant's argument that its

service, which enabled its subscribers to access over-the-air radio broadcasts for a fee,

was a 'carrier' within the meaning of section 111(a)(3).  The *Insight Communications*

8

court declined to adopt the *Infinity Broadcasting* court's holding, however,

distinguishing that case on the ground that, unlike the defendant before it, "the

defendant's primary business in that case [*Infinity Broadcasting*] was not the

retransmission of signals, but rather in providing a dial-up service for a fee." *National

Football League*, 158 F. Supp.2d at 133.

Critically, unlike the defendant in *Infinity Broadcasting*, FilmOn provides the

retransmission of Network digital signals *without charge*. Accordingly, unlike the

defendant in *Infinity Broadcasting*, it is *not* "merely an entrepreneur in a subscriber

business who just happened to transmit signals ancillary to his primary business." *Id.*

at 133. On the contrary, FilmOn's primary business is the retransmission of the

Networks' signals.[2]

In light of the fact that there is scant, if any, case law to support either the

Networks' position that FilmOn is not exempt from liability for copyright

infringement because it is not a 'cable system' under 17 U.S.C. §111(c), or their

---

[2]    Even if this were not the case, however, the *Infinity Broadcasting* court noted
that the law on this issue is far from settled, stating that:

> We live in an era of rapid technological change. The possibilities for
> the capture and retransmission of copyrighted material over the Internet, for
> example, are enormous. Holding that Kirkwood is a 'carrier,' notwithstanding
> that the essence of his business is the retransmission of copyrighted materials,
> would threaten considerable mischief.
>
> Only time and additional cases will permit explication of the precise
> scope of the word 'carrier' in Section 111(a)(3).

*Infinity Broadcasting v. Kirkwood*, 63 F.Supp.2d 420, 426 (S.D.N.Y. 1999).
Unfortunately, since *Infinity Broadcasting* was handed down more than ten (10) years
ago, no new opinions have been issued which address this issue directly.

assumed position that FilmOn is not exempt from liability because it is not a 'carrier' within the meaning of 17 U.S.C. §111(a)(3), the Networks cannot 'substantially' or 'clearly' demonstrate that they are likely to succeed on the merits of their copyright infringement claim. Indeed, these legal questions must be thoroughly investigated and vetted through this lawsuit before any adjudication of them is appropriate.

## C. The Balance of the Hardships Tips Decidedly In Favor of FilmOn

Moreover, considering the seriousness of these legal questions, before the Court can issue an injunction against FilmOn the Networks must demonstrate that the balance of hardships tips decidedly in their favor. They have failed to do so. Indeed, if an injunction issues, far greater hardship would befall FilmOn than the Networks would experience if it does not. FilmOn would suffer substantial harm, experiencing a loss of subscribers, stagnated if not negative growth, severe financial losses for its shareholders, the loss of potential business partners and immeasurable damage to its reputation. (David Dec., ¶¶26-35) Indeed, it is unlikely FilmOn would survive an injunction. (David Dec., ¶36) On the other hand, at most, the Networks would merely suffer a loss of copyright royalties on the network programs made available for streaming by FilmOn to its subscribers. The Networks could be easily compensated for such a loss by damages if found to be an infringer. Injunctive relief is only appropriate when damages would not compensate for a loss.

## D. The Networks Would Not Suffer Irreparable Harm

Even assuming the Court is satisfied that the Networks are 'substantially' and 'clearly' likely to succeed on the merits of their copyright infringement claim, and

therefore that FilmOn's §111(c) and §111(a)(3) exemption defenses are 'substantially' and 'clearly' not viable, the Networks are only entitled to a preliminary injunction if they demonstrate that they will be irreparably harmed in the absence of an injunction. In an effort to make out irreparable harm, the Networks have alleged a number of harms. (Networks' Brief, pp. 9-10)  Upon close examination of these alleged harms, however, it becomes patently obvious that none of them would materialize. (David Dec., ¶10)

First, the Networks would not lose control over their distribution, because FilmOn's adult-oriented stations are not in proximity to the Networks' stations on the FilmOn website and because, contrary to the Networks' assertions, the quality of FilmOn's streaming is superior. (David Dec., ¶¶11-13)  Second, FilmOn is a secure website and therefore would not expose the Networks to unlimited piracy. (David Dec., ¶¶14-15)  Third, the Networks will not lose viewers, and therefore advertising revenue, as a consequence of FilmOn's service, because FilmOn's service does not compete with the Networks' broadcasts.  Because FilmOn only offers on-line access to *live* broadcast network programs and because the Networks only offer on-line access to *delayed* broadcasts, through an on-demand service and foreign syndication, no FilmOn viewer will ever be drawn away from a Network on-line option in favor of watching a network program through FilmOn.  Rather than depriving the Networks of advertising dollars generated by their *on-line* options, therefore, FilmOn in fact increases the advertising dollars generated for the Networks by their *live* network program broadcasts, because FilmOn provides them with additional viewers

11

for these broadcasts. (David Dec., ¶¶16-20, 23)  Fourth, the Networks will not be deprived of licensing fee opportunities to cable and satellite companies by FilmOn, because FilmOn's service is not designed to compete with the services offered by the cable and satellite companies.  FilmOn's target market is laptop and mobile telephone users, and the cable and satellite companies only provide service which allows viewers to watch network programs on their television sets. (David Dec., ¶¶21-22)  Fifth, no Network/affiliate relationship will be harmed by FilmOn's service, because FilmOn is currently in the process of employing its Geo-Filtering technology to restrict the ability of all FilmOn subscribers so that they can only access a network program broadcast by the particular Network affiliate in the area in which they are physically located. (David Dec., ¶¶24-25)

The Networks' failure to establish any irreparable harm alone is a sufficient ground for the Court to deny them a temporary restraining order and/or a preliminary injunction.  As they have also failed to demonstrate that they have a substantial or clear likelihood of success on the merits and that, if an injunction does not issue, the hardships tip decidedly in their favor, the Networks are not entitled to a temporary restraining order and/or a preliminary injunction for this reason as well.

## III.   Conclusion

For all the foregoing reasons, this Court should deny the Networks' motion

for a temporary restraining order and/or a preliminary injunction.

November 16, 2010

Scott Zarin, Esq.
Zarin & Associates, P.C.
1700 Broadway, Suite 3100
New York, NY 10019
Tel. No. (212) 580-3131
Fax No. (212) 580-4393

Attorneys for Defendant
FilmOn.com, Inc.

13