UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CBS BROADCASTING INC.,
CBS STUDIOS INC.,
BIG TICKET TELEVISION, INC.,
NBC STUDIOS LLC,
OPEN 4 BUSINESS PRODUCTIONS LLC,
UNIVERSAL NETWORK TELEVISION, LLC,
NBC SUBSIDIARY (KNBC-TV) LLC,
TWENTIETH CENTURY FOX FILM CORPORATION,
FOX TELEVISION STATIONS, INC.,
ABC HOLDING COMPANY INC.,
AMERICAN BROADCASTING COMPANIES, INC.,
and DISNEY ENTERPRISES, INC.,

    Plaintiffs,

v.

FILMON.COM, INC.,

    Defendant.

Case No. 1:10-cv-7532-NRB

## MEMORANDUM OF PLAINTIFFS IN SUPPORT OF ORDER TO SHOW CAUSE

Plaintiffs respectfully request entry of an Order to Show Cause why the Court should not hold defendant FilmOn.com, Inc. and Mr. Alkiviades David (collectively "FilmOn") in contempt for violating the Stipulated Consent Judgment and Injunction entered on August 8, 2012 (the "Injunction"). That Injunction permanently enjoined FilmOn:

> its affiliated companies, and all of its officers, directors, agents, servants, and employees, and all natural and corporate persons in active concert or participation or in privity with any of them .... from infringing by any means, directly or indirectly, any of plaintiffs' exclusive rights under Section 106 (1) - (5) of the Copyright Act, including but not limited to through the streaming over mobile telephone systems and/or the Internet of any of the broadcast television programming in which any Plaintiff owns a copyright.

Injunction ¶ 1.

In March of this year, FilmOn began offering on its Web sites a new video-on-demand ("VOD") service, in which individual copyrighted programs previously televised by the plaintiffs over their broadcast networks (ABC, CBS, FOX, NBC) were streamed to individual users on-demand, that is, at times of their choosing. As shown in the attached exhibit, the VOD service enables anyone accessing the www.filmon.com Web site to view programming owned by plaintiffs, such as *NBC Meet the Press* and *CBS Evening News*, "in its entirety." Declaration of Christopher Scott Morrow ("Morrow Decl."), Ex. 1. And clicking on the icon to the right of a listed program allows a visitor to the Web site to access a library of multiple episodes of the copyrighted programs, all of which are available for viewing with no charge. Morrow Decl. ¶ 3, Ex. 2. Making such programs available in this manner falls squarely within the category of "streaming over mobile telephone systems and the Internet the broadcast television programming in which Plaintiffs own the copyrights," the conduct expressly proscribed by the Injunction.

Upon learning of this new FilmOn service, plaintiffs' counsel promptly complained to FilmOn counsel, writing on March 20, 2013 to demand that VOD content owned by the plaintiffs be removed. Morrow Decl., Ex. 3. FilmOn counsel responded by letter of March 26, 2013, arguing that the VOD service did not violate the injunction because FilmOn had acquired licenses to the VOD programming from an unidentified "middle man." Morrow Decl., Ex. 4. Counsel for FilmOn repeated this assertion on the May 2, 2013 conference call, and suggested that entry of a protective order might enable them to disclose the identity of this claimed middle man and these supposed licenses. To date, however, plaintiffs have received neither identification of the supposed middle man nor copies of any licenses authorizing the VOD service. This is hardly a surprise, as plaintiffs are aware of no middle man with the authority to license the plaintiffs' copyrighted content for VOD use.

The severe damage caused by the continuing misappropriation of plaintiffs' valuable copyrighted programming by an unlicensed infringer was addressed by the Court at some length in its February 22, 2011 decision entering a preliminary injunction in *WPIX, Inc. v. ivi, Inc.*, 10-Civ.-7415 (NRB). As the Court summed up the situation:

> ivi's popularity means that viewers who would otherwise access plaintiffs' works through legal means can now access them through ivi. Such unsanctioned use is precisely the harm that the copyright laws seek to avoid, subject to the limited situations where a work can claim to be a fair use, seek refuge in a compulsory license, or find some other limited defense to the copyright laws.
>
> . . . .
>
> If plaintiffs lose control over their products or potential revenue sources, they will lose valuable incentives to continue to create programming. In contrast, ivi simply provides an additional way, among many others, for consumers to view the copyrighted programming created by plaintiffs. Significantly, however, plaintiffs currently retain control over how and where this material gets distributed, including Internet retransmissions, through negotiated licenses and other mechanisms.
>
> Defendants and amici argue that an injunction in this case would be anti-competitive, and thus against the public interest. In the copyright context this is not a significant concern. Copyright law by definition allows for monopolies and anticompetitive behavior. The premise of the copyright laws is to award the owner a set of exclusive rights in order to incentivize future authors and creators. This is why the framers granted Congress the power to enact copyright laws, and why every Congress since 1790 has seen fit to do so.

Slip. Op. at 56-57.

The August 8, 2012 Injunction in this matter made clear that any violation would expose FilmOn and all related persons to "all applicable penalties, including contempt of Court." Injunction ¶ 2. A defendant may be held in civil contempt for violating a court order where, as

here, "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Perez v. Danbury Hosp.*, 347 F.3d 419, 424-25 (2d Cir. 2003) (internal quotation marks omitted). *See also Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 642 F. Supp. 2d 276, 303-304 (S.D.N.Y. 2009) (holding defendant in contempt and awarding fees, costs and damages for breach of injunction agreed to in settlement).

Accordingly, the Court should enter an Order to Show Cause why FilmOn should not be held in contempt for violating the Injunction. If FilmOn has any legitimate licenses to the VOD content, they should be produced forthwith. If the Court finds FilmOn to be in contempt, coercive penalties should be imposed as necessary to enforce the injunction, and compensatory penalties should be awarded to plaintiffs in an amount reflecting the severity of FilmOn's misconduct.

By: _____
Peter L. Zimroth
ARNOLD & PORTER LLP
399 Park Avenue
New York, New York 10022
(212) 715-1000
peter.zimroth@aporter.com

-- and --

Robert Alan Garrett
Hadrian R. Katz
C. Scott Morrow
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004
(202) 942-5000
robert.garrett@aporter.com
hadrian.katz@aporter.com
scott.morrow@aporter.com

                                                Counsel for Plaintiffs

Dated: July 2, 2013

## CERTIFICATE OF SERVICE

This is to certify that I have on this, the second day of July 2013, served the foregoing Memorandum Of Plaintiffs in Support Of Order to Show Cause on the following parties via electronic mail:

>Ryan Baker, Esq.
>Jaime Marquart, Esq.
>10990 Wilshire Blvd, Fourth Floor
>Los Angeles, CA 90024
>
>rbaker@bakermarquart.com
>jmarquart@bakermarquart.com
>
>424.652.7800 tel
>424.652.7850 fax

Counsel for FilmOn.Com, Inc. and Mr. Alkiviades David

ARNOLD & PORTER LLP

C. Scott Morrow