**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CBS Broadcasting, Inc., CBS Studios Inc., Big
Ticket Television, Inc., NBC Studios LLC; Open 4
Business Productions LLC, Universal Network
Television, LLC, NBC Subsidiary (KNBC-TV)
LLC, Twentieth Century Fox Film Corporation, Fox
Television Stations, Inc., ABC Holding Company
Inc., American Broadcasting Companies, Inc., and
Disney Enterprises, Inc.

                     Plaintiffs,

     -against-

FilmOn.com, Inc.,

                     Defendant.

Case No. 10 CV 7532 (NRB)

ECF CASE

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION** ............................................................................................................... **1**

**PROCEDURAL BACKGROUND** .................................................................................... **4**

   I.    This New York Action and the Related *ivi* Action ............................................ 4

   II.   The California and D.C. Actions ...................................................................... 6

   III.  Plaintiffs' Contempt Motion ........................................................................... 9

**ARGUMENT** ..................................................................................................................... **11**

   I.    The Order To Show Cause Request Is Moot ................................................... 11

   II.   Plaintiffs Do Not, And Cannot, Meet The Heavy Burden Necessary For The Imposition Of Civil Contempt Sanctions ............................................................ 13

      A.  Legal Standard ............................................................................................ 13

      B.  Plaintiffs Have Not Proven By Clear And Convincing Evidence That The Injunction Clearly and Unambiguously Prohibits FilmOn X's Teleporter Service ........................ 14

          1.   The Injunction Does Not Expressly Prohibit FilmOn X's Mini-Antenna Technology Or   Teleporter Service, And Plaintiffs Previously Chose Not To Litigate That Issue Before This Court ................................................. 14

          2.   The Supreme Court's Recent Decision In *Aereo* Indicates That FilmOn X Is Not An Infringer And Is Entitled To A Compulsory License Like Other Cable Systems ............................................................................ 15

          3.   The District Courts In California and Washington, D.C. Are The Proper Courts To Determine Whether FilmOn X Is Entitled To A Compulsory License ........... 18

      C.  FilmOn and FilmOn X Have Diligently Attempted To Comply With The Injunction Issued In This Case, And With The Preliminary Injunctions Issued In California and Washington, D.C. ........................................................................ 19

   III.  Mr. David Cannot Be Held In Contempt For Purported Violations Of A Stipulated Judgment To Which He Was Not A Party ...................................................... 21

    **CONCLUSION** ........................................................................................................ **21**

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Am. Broad. Cos., Inc. v. Aereo, Inc.*,
    134 S. Ct. 2498 (U.S. 2014)...............................................................2, 9, 16, 17, 18

*Am. Broad. Cos., Inc. v. Aereo, Inc.*,
    847 F. Supp. 2d 373 (S.D.N.Y. 2012)........................................................ *passim*

*Cartoon Network LP, LLP v. CSC Holdings, Inc.*,
    536 F.3d 121 (2d Cir. 2008)...................................................................6, 7, 8

*Drywall Tapers, Local 1974 v. Local 530, Operative Plasterers Int'l Ass'n*,
    889 F.2d 389 (2d Cir. 1989)..................................................................13, 14

*Fox Television Stations, Inc. v. BarryDriller Content Systems Plc.*,
    2:12-cv-6921 (C.D. Cal. Aug. 10, 2012) ...................................................8

*Fox Television Stations, Inc. v. FilmOn.TV Networks, Inc.*,
    Case No. 13-7145, Dkt. No. 1476332 (D.C. Cir. Jan. 23, 2014) ..............................9

*Fox Television Stations, Inc. v. FilmOn X, LLC*,
    1:13-cv-00758 (D.D.C. May 23, 2013) ...................................................8

*Hess v. New Jersey Transit Rail Operations, Inc.*,
    846 F.2d 114 (2d Cir. 1988).................................................................13

*Hester Industries, Inc. v. Tyson Foods, Inc.*,
    160 F.3d 911 (2d Cir. 1998).................................................................13

*Levin v. Tiber Holding Corp.*,
    277 F.3d 243 (2d Cir. 2002).................................................................13

*NBCUniversal Media, LLC v. Aereokiller LLC*,
    Case No. 13-55156, Dkt. No. 125 (9th Cir. Jan. 27, 2014) ......................................8

*NBCUniversal Media, LLC v. FilmOn X, LLC*,
    No. 2:12-cv-06921 (C.D. Cal. Aug. 13, 2012) .........................................8

*New York State Nat'l Org. for Women v. Terry*,
    886 F.2d 1339 (2d Cir. 1989)................................................................12

*Ochoa v. United States*,
    819 F.2d 366 (2d Cir. 1987).................................................................12

*Parademics Electromedicina Comercial, Ltd. V. GE Med Sys. Info. Techs. Inc.*,
   369 F.3d 645 (2d Cir. 2004)......................................................................................3, 13

*Ry. Labor Executives' Ass'n v. Metro-N. Commuter R. Co.*,
   759 F. Supp. 1019 (S.D.N.Y. 1990)....................................................................19

*Spallone v. United States*,
   493 U.S. 265 (1990)......................................................................................13

*In re Stockbridge Funding Corp.*,
   158 B.R. 914 (S.D.N.Y. 1993)......................................................................1, 12, 13

*Upjohn Co. v. Medtron Laboratories, Inc.*,
   894 F. Supp. 126 (S.D.N.Y. 1995)...................................................................13

*WNET, Thirteen v. Aereo, Inc.*,
   712 F.3d 676 (2d Cir. 2013).......................................................................1, 8

*WPIX, Inc. v. ivi, Inc.*,
   No. 1:10-cv-07415-NRB (S.D.N.Y., filed Sep. 28, 2010)....................................5, 6

**Federal Statutes**

17 U.S.C. § 101 ......................................................................................17

17 U.S.C. § 111(f)(3) ...............................................................................17

**DEFENDANT FILMON.COM, INC. AND NON-PARTY ALKIVIADES DAVID'S MEMORANDUM OF LAW IN OPPOSITION TO ORDER TO SHOW CAUSE RE CONTEMPT OF INJUNCTION**

Defendant FilmOn.com, Inc. ("FilmOn") and non-party Alkiviades David (collectively, "FilmOn") oppose the entry of the proposed order finding FilmOn in contempt of the Stipulated Consent Judgment and Injunction entered August 8, 2012 (Dkt. No. 49; Request for Judicial Notice ("RJN") filed concurrently herewith, Ex. K) (the "Injunction").

## INTRODUCTION

FilmOn should not be held in contempt.  The same day as it learned of Plaintiffs' contention that the Teleporter violates the Injunction, FilmOn X removed all Plaintiffs' content from the Teleporter service.  FilmOn X's quick action renders the order to show cause request (the "OSC Request") moot and any civil contempt sanctions inappropriate.  *See In re Stockbridge Funding Corp.*, 158 B.R. 914, 918 (S.D.N.Y. 1993) (civil contempt motions are for coercive purposes, if the contumacious behavior has been purged, sanctions have no coercive function.)  Importantly, Plaintiffs themselves have admitted that the mini-antenna technology, upon which the Teleporter service is based, cannot be governed by the Injunction, because it came about after the Injunction was issued and is the subject of separate litigation that *Plaintiffs* elected to file in California and Washington, D.C.  Plaintiffs elected to file new litigation to enjoin the mini-antenna technology because that technology was different than the technology previously considered by this Court, and that new technology recently had been found by this District to not infringe any copyright in *American Broadcasting Companies, Inc. v. Aereo, Inc.*, 874 F. Supp. 2d 373 (S.D.N.Y. 2012).  This decision subsequently was confirmed by the Second Circuit.  *See WNET, Thirteen v. Aereo, Inc.*, 712 F.3d 676 (2d Cir. 2013).  Accordingly, under then controlling Second Circuit law, FilmOn X's mini-antenna technology did not infringe any

1

copyright held by Plaintiffs.  Hoping to re-litigate their *Aereo*[1] loss in other fora, Plaintiffs filed new litigation against FilmOn X in other jurisdictions.  Plaintiffs obtained injunctions against FilmOn X in California and Washington D.C.  After receiving those injunctions, Plaintiffs' appeals in *Aereo* made their way to the United States Supreme Court, and the propriety of the mini-antenna technology was addressed.

In a recent ruling, the Supreme Court decided that the mini-antenna technology was in all material ways similar to the community antenna television ("CATV") technology addressed in the amendments to the 1976 Copyright Act.  Those amendments clarified that CATV technology, exemplified by cable television systems, *did* constitute a secondary transmission.  However, those amendments also provided a compulsory licensing scheme whereby providers of this technology could register to become secondary transmitters and freely transmit Plaintiffs' content to the viewing public in return for a compulsory license.  The Supreme Court's groundbreaking *Aereo* ruling has now made it clear that this mini-antenna technology bears an "overwhelming likeness to the cable companies targeted by the 1976 amendments."  *Am. Broad. Cos., Inc. v. Aereo, Inc.*, 134 S. Ct. 2498, 2501 (U.S. 2014).  FilmOn X has since applied to be a registered secondary transmitter under the 1976 Act.

The Central District has asked for briefing on the effect of the Supreme Court's ruling, and FilmOn X has already indicated it will argue it is a valid secondary transmitter entitled under new Supreme Court precedent to transmit Plaintiffs' content in return for a compulsory licensing fee under the scheme created by the 1976 amendments to the Copyright Act.  Unhappy with this

---

[1] In this brief, "*Aereo*" refers to the action captioned *Am. Broad. Cos., Inc. v. Aereo, Inc.*, which was originally filed in this District and subsequently appealed to the Second Circuit and the Supreme Court.

unintended effect of its *Aereo* appeal, Plaintiffs have for the first time petitioned this court for a ruling premised upon an argument they forwent long ago – namely, that the mini-antenna technology was already addressed by the consent decree and Injunction issued by this Court almost two years ago.  But Plaintiffs decided to litigate the propriety of the mini-antenna technology, on which the Teleporter depends, in the Central District of California and the District of Columbia.  Those litigations are ongoing.  Those courts will address the propriety of this new technology.

In any event, FilmOn X did not violate the Injunction.  Plaintiffs did not, and cannot, meet the three-prong test for a civil contempt finding, namely: (1) proof of noncompliance is clear and convincing; (2) FilmOn X has not diligently attempted to comply in a reasonable manner; (3) the Injunction is clear and unambiguous.  *See Parademics Electromedicina Comercial, Ltd. V. GE Med Sys. Info. Techs. Inc.,* 369 F.3d 645, 655 (2d Cir. 2004).  Despite what Plaintiffs claim, the evidence shows that FilmOn X has diligently attempted to comply with it in a reasonable manner, and there is no credible evidence suggesting noncompliance, let alone the required clear and convincing evidence.  The Injunction also is no longer "clear and unambiguous," as required for enforcement.  The Plaintiffs state otherwise summarily, but they fail to address new and material events.  The Injunction's clarity has been materially undermined by the combination of new technologies (including the Teleporter service and FilmOn X's remote mini-antenna/DVR technology) and post-Injunction developments in the state of the law, including the Supreme Court's recent *Aereo* decision.  The fact that Plaintiffs only filed this Injunction enforcement action against the Teleporter service after the *Aereo* decision, while having never brought an Injunction enforcement action against FilmOn X's similar remote mini-antenna/DVR technology (at issue in the *Aereo* decision and which Plaintiffs have sought to

enjoin in many other jurisdictions), reveals Plaintiffs are selectively and improperly trying to enforce the Injunction now.  Reinforcing this point is Plaintiffs' failure to contact FilmOn X about the Teleporter service before filing the OSC Request.

Moreover, the Supreme Court's *Aereo* decision supports finding that FilmOn X is the legal equivalent of a "cable system" and thus entitled to the benefits of a compulsory license under the Copyright Act.  Based on this holding, FilmOn X plans to move this Court at an appropriate time to modify or vacate the Injunction.

For all these reasons, the Court should not find FilmOn or Mr. David in contempt of the Injunction and should not sanction them in any way.  Indeed, Mr. David is not even a party to the Injunction.

## PROCEDURAL BACKGROUND

### I.       This New York Action and the Related *ivi* Action

Nearly four years ago, a coalition of broadcast television networks filed two related copyright actions in this District against FilmOn.com and ivi, Inc. – alleging that these companies violated copyright law by streaming broadcast content over the internet.  Plaintiffs filed the first action against ivi, Inc., on September 28, 2010.  (RJN, Ex. A.)  Two days later, on October 1, 2010, Plaintiffs filed this copyright action against FilmOn.com.  (*See* Doc. No. 1.)

At the time, FilmOn operated by picking up over-the-air broadcast signals from cable and streaming the content (and other content) over the internet to users.  (Declaration of Alkiviades David ("David Decl."), ¶ 3.)  It did not use any mini-antenna technology, and it did not require a user to tune into and record a unique copy of a particular program.  The Plaintiffs alleged that:

> [D]efendant has been streaming over the Internet, to subscribers located throughout at least the United States, numerous broadcast stations and the copyrighted programming on those stations – all without the consent of the affected stations or copyright owners.  Defendant's actions are similar to those of

4

the defendants in *WPIX, Inc. v. ivi, Inc.*, No. 1:10-cv-07415-NRB (S.D.N.Y., filed Sep. 28, 2010), in which the plaintiffs here are among the complainants.

(RJN, Ex. B at ¶ 1.)

Shortly after filing complaints against FilmOn and ivi, the broadcast networks moved for a temporary restraining order and preliminary injunction in both actions.  They argued that ivi and FilmOn, which then streamed broadcast content over the internet, did not qualify as cable systems under section 111 of the Copyright Act and therefore were not entitled to compulsory licenses.  (RJN, Ex. C (arguing that "services that stream broadcast signals nationwide over the open Internet are 'vastly different' from other services eligible for the Section 111 compulsory license"); RJN, Ex. D (arguing that "FilmOn does not satisfy the threshold definition of 'cable system' in Section 111(f) in Section 111(f) of the Copyright Act.").)  This Court agreed.

On November 22, 2010, this Court entered a temporary restraining order restraining FilmOn "from infringing by any means, directly or indirectly, any of Plaintiffs' exclusive rights under section 106(1)-(5) of the Copyright Act, including but not limited to through the streaming over mobile telephone systems and/or the Internet of any of the broadcast television programming in which any Plaintiff owns a copyright . . . ."  (Doc. No. 8.)

A couple months later, on February 22, 2011, this Court issued a published decision in the *ivi* case in which it granted the networks' request for a preliminary injunction.  *See WPIX, Inc. v. ivi, Inc.*, 765 F. Supp. 2d 594 (S.D.N.Y. 2011).  Three months later, on May 30, 2012, the Second Circuit heard oral argument in an appeal from this Court's preliminary injunction order in the *ivi* case.  *See WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275 (2d Cir. 2012).

On July 31, 2013 – shortly before the Second Circuit issued its opinion in *ivi* – the parties in the instant action settled.  Pursuant to the settlement, on August 8, this Court entered a Stipulated Consent Judgment and Permanent Injunction, which provides that:

> [FilmOn is] PERMANENTLY RESTRAINED AND ENJOINED from
> infringing, by any means, directly or indirectly, any of plaintiffs' exclusive rights
> under Section 106 (1)-(5) of the Copyright Act, including but not limited to
> through the streaming over mobile telephone systems and/or the Internet of any of
> the broadcast television programming in which any Plaintiff owns a copyright.

(RJN, Ex. K.)

Shortly thereafter, on August 27, the Second Circuit issued its opinion in *ivi*, affirming this Court's preliminary injunction order. *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275 (2nd Cir. 2012). In considering whether ivi qualified as a cable system under section 111, it found that "Congress's intent is not apparent from the statutory text[.]" *Id.* at 282. After examining the legislative history and agency positions on the statute, it concluded that "Congress did not . . . intend for § 111's compulsory license to extend to Internet transmissions." *Id.* It differentiated ivi from traditional cable providers, on the basis that its technical system did not conform to a "systems that use cable or optical fibers to transmit signals through a physical, point-to-point connection between a transmission facility and the television sets of individual subscribers." *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 282 (2d Cir. 2012) *cert. denied*, 133 S. Ct. 1585, 185 L. Ed. 2d 607 (U.S. 2013) (internal citations omitted).

Since the issuance of the Injunction, FilmOn has no longer employed the old internet streaming technology at issue in this action. (David Decl. at ¶ 4.)

## II.    The California and D.C. Actions

After this Court entered the Injunction, FilmOn X developed and deployed a new technology that was specifically designed to comply with the Injunction and the Second Circuit's decision in *Cartoon Network LP, LLP v. CSC Holdings, Inc.*, 536 F.3d 121 (2d Cir. 2008) ("*Cablevision*"). In that case, the Second Circuit had ruled that a remote storage DVR system allowing users to record and store programming on central hard drives housed and maintained by

the defendant did not violate the public performance rights of copyright owners.  *Id.* at 125, 137, 139 (because each RS-DVR transmission was "made to a single subscriber using a single unique copy," the transmission was a private, not public).

Consistent with the *Cablevision* decision, FilmOn X, a business partner of FilmOn.com, deployed a new service that allowed consumers access to their own remotely located antenna, thereby enabling those consumers to create and access, from any internet-enabled device, unique copies of the same free-to-air broadcast programming that they would be able to access freely with a traditional "rabbit ears" antenna.  This technology is materially different from the old streaming technology previously employed by FilmOn.

After FilmOn X adopted this new mini-antenna/DVR technology, Plaintiffs never sought relief from this Court for violation of the Injunction (even though the parties have been in front of this Court concerning other matters related to the Injunction).  Instead, the Fox Plaintiffs and the three other major networks made a strategic decision to pursue new copyright actions against FilmOn X in the Central District of California and the District of Columbia where the courts were not and are not bound by the Second Circuit's *Cablevision* decision.  This strategic decision was made after the Southern District of New York denied their motion for a preliminary injunction in the *Aereo* case on July 11, 2012.  *Am. Broad. Cos., Inc. v. Aereo, Inc.*, 847 F. Supp. 2d 373 (S.D.N.Y. 2012).  The court denied the motion on the basis that, among other things, the plaintiffs were unlikely to succeed on the merits because it was not likely they could prove Aereo made public performances and was therefore liable for copyright infringement, as defined in *Cablevision.  Id.* at 392-93.

In light of that decision, on August 10, 2012, the Fox Plaintiffs filed the first of several new copyright actions against FilmOn X in the Central District of California regarding FilmOn

X's mini-antenna/DVR technology. *Fox Television Stations, Inc. v. BarryDriller Content Systems Plc.*, 2:12-cv-6921 (C.D. Cal. Aug. 10, 2012). The other major broadcast networks followed Fox's lead with a related lawsuit of their own in the same forum. *NBCUniversal Media, LLC v. FilmOn X, LLC*, No. 2:12-cv-06921 (C.D. Cal. Aug. 13, 2012). Subsequently, a third lawsuit was filed in the District of Columbia. *Fox Television Stations, Inc. v. FilmOn X, LLC*, 1:13-cv-00758 (D.D.C. May 23, 2013).

In the California and D.C. actions, the plaintiffs argued that FilmOn X's mini-antenna/DVR technology violate their exclusive public performance rights under the Transmit Clause, as they did in the district court with Aereo. Despite having previously argued to this Court that FilmOn was not a cable system, they repeatedly analogized FilmOn X's service to a cable company in the California and D.C. actions. The plaintiffs argued "FilmOn X provides the same type of broadcast retransmission service as cable systems (*e.g.*, Comcast) and satellite carriers (*e.g.*, DirecTV) — retransmitting broadcasts of copyrighted television programs to unlimited numbers of subscribers." (RJN, Ex. F at p.2).

Although the Second Circuit, following the *Cablevision* decision,[2] found a substantially similar mini-antenna/DVR technology used by Aereo, Inc. ("Aereo") was legal, the district courts in California and D.C. disagreed and issued preliminary injunctions. (RJN, Exs. G & H.) FilmOn X complied in good faith with those orders. (David Decl. at ¶ 9; Declaration of Mykola Kutovyy ("Kutovyy Decl.") at ¶¶ 5-10.) It also appealed both orders; those appeals subsequently were stayed after the Supreme Court granted a writ of certiorari in *Aereo*. *See, e.g., NBCUniversal Media, LLC v. Aereokiller LLC*, Case No. 13-55156, Dkt. No. 125 (9th Cir. Jan.

---

[2] In April 1, 2013, the Second Circuit ruled that Aereo's service was legal and did not infringe on the networks' exclusive rights of public performance. *See WNET, Thirteen v. Aereo, Inc.*, 712 F.3d 676 (2d Cir. 2013).

27, 2014); *Fox Television Stations, Inc. v. FilmOn.TV Networks, Inc.*, Case No. 13-7145, Dkt. No. 1476332 (D.C. Cir. Jan. 23, 2014).   FilmOn has complied in good faith with the injunctions issued in the FilmOn X case.

On June 25, 2014, the Supreme Court issued its decision in Aereo.  It held that Aereo's remote mini-antenna/DVR technology makes public performances rather than private performances, reasoning that "Aereo's activities are substantially similar to those of the CATV companies that Congress amended the Act to reach."  *Am. Broad. Companies, Inc. v. Aereo, Inc.*, 134 S.Ct. at 2501.   The Supreme Court consistently found that Aereo's technology is not substantially different from cable systems and, for the Copyright Act's purposes, the small differences did not matter.  *See, e.g., id.* ("Viewed in terms of Congress' regulatory objectives, these behind-the-scenes technological differences do not distinguish Aereo's system from cable systems").  Thus, while the Court's opinion in *Aereo* establishes that Aereo engages in public performances under the Copyright Act, it also suggests that Aereo (and, by extension, FilmOn X) are entitled to compulsory licenses as cable systems under section 111.

For this reason, on July 10, 2014, FilmOn X applied with the Copyright Office for cable licenses in 14 markets, including the New York City metropolitan area.[3]  (David. Decl. ¶ 13.) Assuming those applications are granted (and they should be), they will permit FilmOn X to make local and distant retransmissions of Plaintiffs' broadcasts.

## III.   Plaintiffs' Contempt Motion

On July 3, 2014 – just before the holiday weekend – Plaintiffs applied for an Order to Show Cause why this Court should not hold FilmOn in contempt for violating the Injunction "by

---

[3] Aereo has also taken steps to establish its right to a compulsory license.  (*See* RJN, Ex. I (*ABC, et al. v. Aereo, Inc.*, 12-cv-1540 (AJN)(HBP)(consolidated), Doc. No. 313 (July 9, 2014 joint letter to the court regarding the next steps)).

publicly performing copyrighted broadcast television programs in which the Plaintiffs own or exclusively control the copyrights over its "Teleporter" system."  (Doc. No. 91 at p. 1.)  This "Teleporter" system is an additional feature that relies on the same mini-antenna/DVR technology that was and is at issue in the California and D.C. actions.  (David Decl. at ¶ 7.)  It allows users to virtually view broadcast content from a distant location that is not necessarily within the local broadcast geographic area.  (*Id.*)

Plaintiffs did not meet and confer with FilmOn about the Teleporter service before they applied for an Order to Show Cause.  (Declaration of Ryan G. Baker ("Baker Decl."), ¶ 4.)  Further, because of the timing of the filing at the start of the Fourth of July holiday weekend on July 3 (a Thursday), FilmOn first learned of the OSC Request's allegations on July 7 (a Monday), when the Court entered the Order to Show Cause (Doc. No. 91).  (*Id.*)[4]

Within hours on that very same day, FilmOn X deactivated the Teleporter service (which was set up so that only local New York City network programming was available), and FilmOn X voluntarily removed all network programming from (which was and still is permitted in the Second Circuit and is not a subject of the OSC Request).  (David Decl. at ¶¶ 10-11; Baker Decl. at ¶ 5.)  FilmOn X also commenced an investigation into the claims made by Plaintiffs in an effort to determine how counsel for the Plaintiffs was apparently able to access Plaintiffs' copyrighted content on New York channels from jurisdictions outside of the Second Circuit using the Teleporter service.  (Kutovyy Decl. at ¶¶ 11-13.)

That same day, FilmOn's counsel also contacted Plaintiffs' counsel in an attempt to resolve the matter without having to tie up the Court's time and resources.  (Baker Decl. at ¶ 5.)

---

[4] The Request was filed late in the day on July 3, 2014 (the day before the July 4 holiday) and neither FilmOn nor its FilmOn's counsel was aware of it until Monday, July 7, when the Order to Show Cause was entered. (David Decl.¶ 10; Ryan Decl ¶ 4.)

The next day, July 8, counsel met and conferred about the OSC Request.  (*Id.*)  During the meet and confer, FilmOn's counsel informed Plaintiffs' counsel that FilmOn had voluntarily deactivated the Teleporter service and would not reactivate the service or otherwise retransmit Plaintiffs' content until there is a specific court order allowing it to do so.  (*Id.*)  Further, FilmOn's counsel noted that as a result of the *Aereo* decision, FilmOn was entitled to a compulsory license under Section 111 of the Copyright Act.  (*Id.* ¶ 5.)

To date, FilmOn X has undertaken various diligent efforts to ensure on-going compliance with the Injunction issued by this Court, as well as the preliminary injunction orders issued by the California and D.C. district courts.  (David Decl. at ¶¶ 9, 11; Kutovyy Decl. at ¶¶ 5-14.) FilmOn X has removed all access to Plaintiffs' copyrighted content and, as it as done in the past, will continue to systematically monitor the systems to ensure to the best of its abilities that it does not make any displays of Plaintiffs' content, until it is ruled that such displays are legal. (David Decl. at ¶ 11.)

## ARGUMENT

### I.   The Order To Show Cause Request Is Moot

As a threshold matter, the OSC Request is moot.  FilmOn X on its own initiative and out of an abundance of caution deactivated the Teleporter service as soon as it learned of Plaintiffs' concerns.  (David Decl. ¶ 11.)  FilmOn X is also not going to reactivate it or otherwise make retransmission of Plaintiffs' content until there is a specific court order permitting such activity. (Id. ¶ 11.)  Any Court finding of contempt that imposes sanctions would therefore only inappropriately punish FilmOn, FilmOn X or David.

Civil contempt sanctions differ from criminal contempt sanctions in that they are not meant to punish.  Thus, civil contempt sanctions may be fashioned to coerce compliance or to

compensate for actual losses.  *In re Stockbridge Funding Corp.*, 158 B.R. at 918 (citing *New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1350-51 (2d Cir. 1989).  Coercive sanctions afford a contemnor an opportunity to "purge" the contempt, and end as soon as the contemnor "ceases his contumacious behavior." *Id.* (citing *Ochoa v. United States*, 819 F.2d 366, 369 (2d Cir. 1987).  In *Stockbridge*, the district court found that the sanction had no coercive function because the bankruptcy court appellant had fully complied with the judicial directions by the time the contempt finding was issued.  *In re Stockbridge Funding Corp.*, 158 B.R. at 918.  For that reason, the court vacated the civil contempt sanctions.  *Id.* at 919.

Here, FilmOn X's voluntarily "purge" of the purportedly contemptuous conduct (*i.e.*, ceasing to operate the Teleporter service) occurred within hours of learning of Plaintiffs' contempt allegations on July 7, when FilmOn X received the Order to Show Cause.  This is obviously well before the July 22, 2014 contempt hearing date.

FilmOn X not only voluntarily deactivated the Teleporter service, but FilmOn X also took the significant additional step of voluntarily deactivating all network programming, even though this was not the subject of the OSC Request and is permitted where it was operating. (David Decl. at ¶ 11.)  Importantly, this was the first opportunity for FilmOn X to take these actions because Plaintiffs did not advise FilmOn X that they believed the Teleporter service violated the Injunction before filing the OSC Request.  (*See* David Decl. at ¶ 10.)  In addition, FilmOn X's counsel almost immediately met and conferred with Plaintiff's counsel in an attempt to resolve the dispute so that no more Court time and resources were exhausted.  (Baker Decl. ¶ 5.)  Because FilmOn X purged the alleged contemptuous behavior as soon as possible, as in *Stockbridge*, any sanctions would "have no coercive function" and a contempt order should not be issued.

**II.**     **Plaintiffs Do Not, And Cannot, Meet The Heavy Burden Necessary For The Imposition Of Civil Contempt Sanctions**

    **A.**     **Legal Standard**

Plaintiffs do not, and cannot, meet the substantial burden of the three-prong test necessary for a finding of civil contempt.  To find a party in civil contempt, a movant like Plaintiffs must establish that: (1) the order the opponent failed to comply with is clear and unambiguous; (2) the proof of noncompliance is clear and convincing; and (3) the opponent has not diligently attempted to comply in a reasonable manner.  *Parademics,* 369 F.3d at 655. Tellingly, Plaintiffs have ignored the following law pertinent to any analysis of whether civil contempt is merited, because this law shows what a heavy burden Plaintiffs bear.

The first requirement is only met if the order leaves "no uncertainty in the minds of those to whom it is addressed."  *Hess v. New Jersey Transit Rail Operations, Inc.,* 846 F.2d 114, 116 (2d Cir. 1988).  The party must "be able to ascertain from the four corners of the document expressly what acts are forbidden."  *Drywall Tapers, Local 1974 v. Local 530, Operative Plasterers Int'l Ass'n,* 889 F.2d 389, 395 (2d Cir. 1989).  With respect to the second requirement, "the party seeking to hold another in civil contempt bears the burden of proof" to establish the offense by clear and convincing evidence.  *Levin v. Tiber Holding Corp.,* 277 F.3d 243, 250 (2d Cir. 2002).   Because the civil contempt remedy is so severe, this standard lies between preponderance of evidence and proof beyond a reasonable doubt on the evidentiary scale. *Upjohn Co. v. Medtron Laboratories, Inc.*, 894 F. Supp. 126, 133 (S.D.N.Y. 1995).

The "power of a district court to impose contempt liability is carefully limited" and the appellate court's review of a contempt order "is more rigorous than would be the case in other situations . . . ."  *Hester Industries, Inc. v. Tyson Foods, Inc.*, 160 F.3d 911, 915-16 (2d Cir. 1998) (internal quotations omitted).  District courts are required "to use the least possible power adequate to the end proposed" in selecting which sanctions are appropriate.  *Spallone v. United States*, 493 U.S. 265, 276 (1990).  Importantly, civil contempt sanctions must afford the contemnor the opportunity to purge his contempt.  *See, e.g., In re Stockbridge Funding Corp.*,

158 B.R. 914, 918 (S.D.N.Y 1993) (vacating sanctions issued by the bankruptcy court for contempt).

      **B.**      **Plaintiffs Have Not Proven By Clear And Convincing Evidence That The Injunction Clearly and Unambiguously Prohibits FilmOn X's Teleporter Service**

The Injunction is not clear and unambiguous and the proof of noncompliance is not clear and convincing. The "four corners of the document" do not allow express ascertainment of "what acts are forbidden." *Drywall Tapers, Local 1974 v. Local 530, Operative Plasterers Int'l Ass'n,* 889 F.2d 389, 395 (2d Cir. 1989). Indeed, the Injunction bars infringement, but other courts' determination of whether or not new technologies (technologies not developed and employed when the Injunction was issued) infringe copyright has evolved over the past several years. Indeed, those legal developments support a finding that the Teleporter service does not violate the Injunction. At a minimum, FilmOn had an ample and reasonable reason to believe the Teleporter did not infringe and therefore did not violate the Injunction. In any event, the pending actions in California and Washington, D.C. are the proper courts to adjudicate FilmOn X's compulsory license defense.

      **1.**      **The Injunction Does Not Expressly Prohibit FilmOn X's Mini-Antenna Technology Or Teleporter Service, And Plaintiffs Previously Chose Not To Litigate That Issue Before This Court**

At the time the parties settled this action and this Court entered the Injunction in August 2012, FilmOn employed an Internet streaming technology. For that reason, the Injunction specifically prohibited FilmOn from "streaming over mobile telephone systems and/or the Internet of any of the broadcast television programming in which any Plaintiff owns a copyright." (RJN, Ex. K.) The Injunction prohibits FilmOn from "infringing, by any means, directly or indirectly, any of plaintiffs' exclusive rights under Section 106 (1)-(5) of the Copyright Act." (*Id.*) Thus, under the Injunction, FilmOn was left free to adopt other non-

infringing technologies, including its mini-antenna/DVR technology and the related Teleporter service.

Importantly, the Injunction does not expressly mention or prohibit the mini-antenna/DVR technology and the related Teleporter service that FilmOn X later developed to comply with the Injunction.  Indeed, Plaintiffs implicitly conceded that the Injunction did not cover this newer technology since they chose to litigate this action in California and Washington D.C., instead of proceeding in this Court pursuant to the Injunction.

Plaintiffs for the first time now assert that the Teleporter service infringes on Plaintiffs' exclusive rights in violation of the Injunction.  But Plaintiffs must still prove by clear and convincing evidence that the Injunction clearly and unambiguously enjoins the mini-antenna/DVR technology.  They have barely even attempted to do so.  In fact, the Supreme Court's recent decision in *Aereo* treated Aereo as a cable system under the Copyright Act, which would entitle it (and FilmOn X) to a compulsory license under section 111.  Accordingly, FilmOn X is not an "infringing" service and does not violate "plaintiffs' exclusive rights under Section 106 (1)-(5) of the Copyright Act."  (*See* RJN, Ex. K.)

> **2.     The Supreme Court's Recent Decision In *Aereo* Indicates That FilmOn X Is Not An Infringer And Is Entitled To A Compulsory License Like Other Cable Systems**

While the Supreme Court has rejected the argument that Aereo does not engage in public performances, its opinion clearly invites further litigation as to whether Aereo (and by extension FilmOn) nevertheless qualify as cable systems entitled to a compulsory license.  At oral argument in *Aereo*, Associate Justice Sotomayor stated (in the first question of the case) that, in her view, Aereo "fits" the "definition of a cable company" under the Copyright Act.  (*See* RJN,

Ex. J at p. 3.)  The majority opinion, written by Justice Breyer, echoes Justice Sotomayor's comment and repeatedly analogized Aereo to CATV and other cable systems.

In *Aereo*, the Supreme Court looked to the purpose and history of the Copyright Act and determined that there was no critical difference between Aereo and cable systems.  134 S. Ct. at 2501.  It held that one of Congress' primary purposes in amending the Copyright Act in 1976 was to overturn the United States Supreme Court's holdings that the activities of community antenna television providers ("CATV") fell outside the Copyright Act's scope.  *Id.* at 2504-05.  The Court found that Aereo's activities are "substantially similar[5] to those of the CATV companies that Congress amended the Act to reach" because "Aereo is not simply an equipment provider," but also "sells a service that allows subscribers to watch television programs, many of which are copyrighted, virtually as they are being broadcast."  *Id.* at 2506.  The Court recognized, "as Aereo and the dissent emphasize," that Aereo differs from CATV in the sense that it does not constantly broadcast content, but does so at the direction of users. *Id.* at 2507.  Despite these differences, the Court concluded that "given Aereo's overwhelming likeness to the cable companies targeted by the 1976 amendments, this sole technological difference . . . does not make a critical difference . . . ."  *Id.*

The Supreme Court stated unambiguously and consistently throughout the opinion that Aereo's service (which uses technology identical to FilmOn) is "substantially similar" to cable

---

[5] The plaintiffs in the *ivi* action previously acknowledged that companies that are "substantially similar" to traditional cable companies are entitled to a compulsory license under Section 111.  In a brief in that action, they wrote that the Register of Copyrights has acknowledged that "new systems may qualify even if they are not the 'types envisioned by Congress when it enacted Section 111'" and that "the Register also made clear that only 'new systems that are *substantially similar* to those systems that already use Section 111 should be subject to the license.'"  (RJN, Ex. C at 9-10.)  Since the Supreme Court has ruled that Aereo's system is, in fact, "substantially similar" to CATV companies that are entitled to the compulsory license, Aereo (and by extension FilmOn) are also entitled to a license.  *See Aereo*, 134 S. Ct. at 2506.

system.  *See id.*  In defining a cable system for the purpose of the compulsory license program, the statute broadly requires:

> [1] a facility, located in any State, Territory, Trust Territory, or Possession, that [2] in whole or in part receives signals transmitted or programs broadcast by one or more television broadcast stations licensed by the Federal Communications Commission, and [3] makes secondary transmissions of such signals or programs by wires, cables, microwave, or other communication channels to [4] subscribing members of the public who pay for such service.

17 U.S.C. § 111(f)(3).  Additionally, Section 101 states that "to 'transmit' a performance or display is to communicate it by any device or process whereby images or sounds are received beyond the place from which they are sent."  17 U.S.C. § 101.

FilmOn meets these requirements, as the Supreme Court recognized in *Aereo*.  FilmOn receives primary transmissions in the form of over-the-air signals transmitted by stations licensed with the Federal Communications Commission.  It then makes secondary transmissions to the subscribing public by wires, cables, microwaves, or other communication channels. To the extent Aereo and FilmOn do not specifically fit within that definition, that Supreme Court has stated, "the differences in Aereo's technology "do not distinguish Aereo's system from cable systems…."  *Aereo,* 134 S. Ct. at 2507.

Moreover, in *Aereo*, the Supreme Court stated, "We agree that Congress, while intending the Transmit Clause to apply broadly to cable companies and their equivalents, did not intend to discourage or to control the emergence or use of different kinds of technologies."  *Id.* at 2510. This statement clearly implies that "different kinds of technologies" can fall within the Copyright Act besides those expressly articulated in the original language drafted in 1976.  While the Court recognized there were some technological differences between Aereo and cable companies, it stated "[v]iewed in terms of Congress' regulatory objectives, why should any of these technological differences matter . . . .  Congress would as much have intended to protect a

copyright holder from the unlicensed activities of Aereo as from those of cable companies." *Id.* at 2509. The Court additionally states "this difference means nothing to the subscriber. It means nothing to the broadcaster." *Id.* at 2507.

Because Aereo and FilmOn embrace the same technology, what holds true for Aereo with regard to this analysis, holds equally true for FilmOn. Therefore, in light of the Supreme Court's findings in *Aereo*, FilmOn qualifies as a cable system and is entitled to the benefits and responsibilities of the compulsory license scheme under Section 111 of the Copyright Act. This would make its retransmissions outside the scope of the Injunction.

### 3.    The District Courts In California and Washington, D.C. Are The Proper Courts To Determine Whether FilmOn X Is Entitled To A Compulsory License

Although no court (including this one) has yet been asked to rule on the effect of the *Aereo* decision on FilmOn X's right to a compulsory license, the proper forum to decide that issue is California and Washington, D.C. where Plaintiffs elected to file suit and challenge the legality of FilmOn X's mini-antenna/DVR service. In fact, the Ninth Circuit and D.C. Circuit issued orders requiring the parties to submit supplemental briefing on the effect of the *Aereo* decision on the pending cases, and the parties already have submitted joint status reports with Judge Wu in the Central District of California outlining their respective positions on the future progress of those actions. (RJN, Ex. H.)

Plaintiffs' claim that FilmOn cannot raise the compulsory license defense now because the Injunction allegedly prevents FilmOn from doing so is without merit. (*See* OSC Request at 4.) Although paragraph 3 of the Injunction states that all of previously raised defenses (which would include the "cable system" defense") are "resolved" by the Injunction, that resolution was based on the Internet streaming technology then in use, not the new technology at issue here, and

before the Supreme Court's *Aereo* decision.  In light of these new and significant developments, it is undoubtedly proper for FilmOn to raise the issue now.

Because of changes in technology and the law, the Injunction has become unclear and ambiguous and Plaintiffs cannot satisfy the first prong of the civil contempt test.  Moreover, because the *Aereo* decision means FilmOn is now the legal equivalent of a cable system, FilmOn plans to move this Court at the appropriate time to modify or vacate the "[I]njunction founded on the superseded law."  *Ry. Labor Executives' Ass'n v. Metro-N. Commuter R. Co.*, 759 F. Supp. 1019, 1022 (S.D.N.Y. 1990).  It can do so because "[w]hen a change in the law authorizes what had previously been forbidden, it is abuse of discretion for a court to refuse to modify an injunction founded on the superseded law."  *Id*.

Taking all of the above into consideration, FilmOn believes, and it was credible for it to believe, that it was not acting illegally through FilmOn X's remote mini-antenna/DVR technology and when it activated the similar Teleporter technology, both of which provide viewers the ability to see network content, the same as cable companies.

### C.   FilmOn and FilmOn X Have Diligently Attempted To Comply With The Injunction Issued In This Case, And With The Preliminary Injunctions Issued In California and Washington, D.C.

Plaintiffs also cannot uphold their burden of proving that FilmOn, FilmOn X or Mr. David failed to diligently comply with the Injunction in this matter (as well as the orders issued by the courts in California and Washington, D.C.).  As an initial matter, FilmOn ceased operating the streaming internet technology at issue in the instant action when the parties settled this matter in August 2012.  (David Decl. at ¶ 4.)

Subsequently, after other district courts issued preliminary injunctions against FilmOn X relating to its mini-antenna/DVR technology, FilmOn X took prompt action to comply with those

orders to remove access to the plaintiffs' copyrighted programming in the jurisdictions covered by the preliminary injunctions.  (David Decl. at ¶¶ 5-10.)   As a result of these efforts, "[u]sers who attempt to access the plaintiffs' copyrighted content from outside the geographic limits of the Second Circuit are denied access and do not receive the option of accessing any of it." (David Decl., ¶ 9.)  Further, FilmOn X (as well as Mr. David personally) conducted periodic testing to ensure that plaintiffs' content is not viewable outside the Second Circuit.  (*Id*.)

Ultimately, it is the proper role of the district courts in California and Washington, D.C. who issued the preliminary injunctions enjoining the mini-antenna/DVR technology to determine whether FilmOn X has diligently complied with those orders.  However, as soon as FilmOn X learned that Plaintiffs' counsel was able to access to New York City broadcast content from cities outside of the Second Circuit using the Teleporter service, FilmOn X conducted an investigation into the matter.  After testing and analysis of existing data, FilmOn X was "unable to identify any bugs or glitches in [its] system that would explain plaintiffs' ability to access New York City broadcast content from other jurisdictions."[6]  (Kutovyy Decl., ¶ 12.)

In any event, as soon as Plaintiffs raised their concerns over the Teleporter service, FilmOn X deactivated the Teleporter technology until such time as it is ruled not to infringe Plaintiffs' copyrights.  (David Decl. at ¶ 11.)  Additionally, it voluntarily suspended its transmission of all network programming using the mini-antenna/DVR technology.   (*Id*.)  It did so even though the Injunction in this action does not cover that technology or the Teleporter

---

[6] FilmOn X uses IP addresses and GPS coordinates to determine a subscriber's geo location, which allows it to regulate access to content.  (Kutovyy Decl., ¶ 10.)  Unfortunately, motivated subscribers can in certain circumstances circumvent these controls through a process known as "geospoofing," in which a program is used to block a subscriber's real location and report an untrue one.  (*Id*., ¶ 13.)

service.  Thus, this Court should find that FilmOn, FilmOn X, and Mr. David have diligently complied with the Injunction and that OSC Request is moot.

## III.  Mr. David Cannot Be Held In Contempt For Purported Violations Of A Stipulated Judgment To Which He Was Not A Party

Lastly, Plaintiffs' motion seeks an Order to Show Cause why the Court should not hold both FilmOn, FilmOn X and Mr. David in contempt for violating the Stipulated Consent Judgment and Injunction (the "Injunction").  (RJN, Ex. K.)  Mr. David, however, is not a party to the Injunction or stipulated judgment.  The Injunction does not mention Mr. David.  Instead, the Injunction applies solely to the conduct of "Defendant FilmOn.com, Inc. (the 'Defendant')."   Plaintiffs provide neither argument nor explanation of how Mr. David could possibly violate an injunction to which he is not a party.  Particularly in light of the drastic nature of contempt sanctions, Plaintiffs' Request that Mr. David be held in contempt must be categorically rejected.

## Conclusion

For the reasons set forth above, FilmOn respectfully requests the Court deny the OSC Request and find that FilmOn, FilmOn X, and Mr. David did not violate the Injunction.


Dated: July 14, 2014                    By:    s/ Ryan G. Baker
                                        _____
                                          Ryan G. Baker (Admitted *Pro Hac Vice*)


                                        Ryan Baker
                                        Baker Marquart LLP
                                        10990 Wilshire Blvd., Fourth Floor
                                        Los Angeles, California 90024
                                        Telephone: (424) 652-7800 / Fax: (424) 652-7850
                                        E-Mail: rbaker@bakermarquart.com

                                        Counsel for Defendant FilmOn.com, Inc. and
                                        Non-Party Alkiviades David