UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CBS BROADCASTING INC.,<br>CBS STUDIOS INC.,<br>BIG TICKET TELEVISION, INC.,<br>NBC STUDIOS LLC,<br>OPEN 4 BUSINESS PRODUCTIONS LLC,<br>UNIVERSAL NETWORK TELEVISION, LLC,<br>NBC SUBSIDIARY (KNBC-TV) LLC,<br>TWENTIETH CENTURY FOX FILM CORPORATION,<br>FOX TELEVISION STATIONS, INC.,<br>ABC HOLDING COMPANY INC.,<br>AMERICAN BROADCASTING COMPANIES, INC.,<br>and DISNEY ENTERPRISES, INC.,<br><br>        Plaintiffs,<br><br>v.<br><br>FILMON.COM, INC.,<br><br>        Defendant. | Case No. 1:10-cv-07532-NRB |

**REPLY MEMORANDUM OF PLAINTIFFS IN SUPPORT OF ORDER
TO SHOW CAUSE RE CONTEMPT OF INJUNCTION ("OSC")**

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ................................................................................................ 1

II.   FILMON'S CONTEMPT IS CLEAR AND INTENTIONAL .............................................. 2

III.  FILMON'S *POST-HOC* EXCUSES FOR ITS CONTEMPT ARE UNAVAILING............ 4

      A.   FilmOn's Reliance on the Potential Availability of a Section 111 License Fails .......... 4

           1.   FilmOn Knowingly Infringed Plaintiffs' Rights Without a License ........................ 4

           2.   FilmOn Is Not Entitled to a Section 111 License.................................................... 5

      B.   This Court Is the Proper Forum to Adjudicate Issues Raised by the OSC.................... 8

      C.   FilmOn Is a Repeat Contemnor Whose After-The-Fact Promise to Abide by the Injunction Comes Too Late ............................................................................................. 9

      D.   Mr. David Is Bound by the Injunction ...................................................................... 10

IV.   CONCLUSION.................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Broad. Cos. v. Aereo, Inc.*,
134 S. Ct. 2498 (2014) .................................................................................. *passim*

*Fox Television Stations, Inc., et al. v. BarryDriller Content Sys., PLC, et al.*,
915 F. Supp. 2d 1138 (C.D. Cal. 2012) ..................................................................8

*Fox Television Stations, Inc., et al. v. FilmOn X LLC, et al.*,
966 F. Supp. 2d 30 (D.D.C. 2013) .........................................................................8

*United States v. Philip Morris USA Inc.*,
287 F. Supp. 2d 5 (D.D.C. 2003) ...........................................................................5

*WPIX, Inc., v. ivi, Inc.*,
691 F.3d 275 (2d. Cir. 2012) ..........................................................................2, 6, 7

**STATUTES AND RULES**

17 U.S.C. § 101 ..............................................................................................................1

17 U.S.C. § 106 ..........................................................................................................4, 6

17 U.S.C. § 111 ...................................................................................................... *passim*

17 U.S.C. § 119 ..............................................................................................................6

**OTHER AUTHORITIES**

H.R. Rep. No. 94-1476 ...................................................................................................6

*Supplementary Report of the Register of Copyrights on the General Revision of
U.S. Copyright Law: 1965 Revision Bill* .............................................................6

## I.      INTRODUCTION

On June 25, 2014, the Supreme Court held unequivocally that Internet services like FilmOn's make infringing public performances under the Copyright Act when they retransmit broadcast television programming over the Internet without authorization.  *Am. Broad. Cos. v. Aereo, Inc.*, 134 S. Ct. 2498, 2511 (2014) ("*Aereo*").  That issue is now settled and even FilmOn does not dispute it.  *See* Opp'n at 9 ("[T]he Court's opinion in *Aereo* establishes that Aereo [(and, by extension, FilmOn)] engages in public performances under the Copyright Act . . . .").

Nonetheless, FilmOn and Mr. David chose to use the *Aereo* decision as an excuse to launch their "Teleporter" service, claiming that *Aereo* held that services like FilmOn were "cable systems" entitled to a compulsory license under Section 111 of the Copyright Act.  The Supreme Court never found that Aereo was in fact a "cable system," and that specific issue was not before the Court, as Aereo had expressly disclaimed being a cable system.  Brief for Resp't Aereo, *Am. Broad. Cos. v. Aereo, Inc.*, U.S. No. 13-461, 2014 WL 1245459, at *34 n.17 (Mar. 26, 2014) ("Petitioners do not argue that Aereo is a 'cable system' under § 111, and Aereo is not one."). Rather, the Supreme Court held that Aereo was publicly performing under the Transmit Clause, an intentionally broad provision that explicitly reaches any person or entity that transmits a performance "to the public" by "any device or process."  *Aereo*, 134 S. Ct. at 2509; 17 U.S.C. § 101.  The Court held that Aereo could not be deemed "simply an equipment provider" because its activities -- namely retransmitting copyrighted programming to subscribers for a fee -- were substantially similar to the cable companies that Congress enacted the Transmit Clause to reach. *Aereo*, 134 S. Ct. at 2506.  This is a far cry from holding that Aereo is a cable system entitled to a compulsory license under Section 111.

The issue of whether Internet retransmitters are entitled to Section 111 compulsory licenses was squarely presented to, and rejected by, the Second Circuit in *WPIX, Inc., v. ivi, Inc.*,

1

691 F.3d 275 (2d. Cir. 2012).  The *ivi* decision is controlling and, therefore, dispositive.

Moreover, FilmOn knowingly gave up its right to assert a Section 111 defense in the Settlement

Agreement and Injunction.  *See* Injunction ¶ 3 (Dkt. No. 49).  Finally, and perhaps most telling,

FilmOn admits it has not yet obtained a Section 111 license.  FilmOn cannot violate the

Injunction merely in the hope that someday it may have a license.

      FilmOn's other excuses for its contumacious conduct are equally misplaced.  This Court

can and should resolve the issues raised in the OSC concerning FilmOn's contempt, which arises

out of FilmOn's post-*Aereo* transmission of New York City broadcast signals around the

country.  This Court currently is the only court to enjoin FilmOn's activities within the Second

Circuit, making it uniquely positioned to address FilmOn's latest violation of Plaintiffs' rights.

FilmOn's *post-hoc* and likely temporary compliance with the Injunction after receipt of the OSC

also does not excuse its behavior, particularly given FilmOn's long history of violating

injunctions with respect to its streaming services.  It simply shows that FilmOn was caught and is

trying to avoid the consequences of its contempt.

## II.    FILMON'S CONTEMPT IS CLEAR AND INTENTIONAL

      Plaintiffs have made the necessary three-part showing for a finding of contempt against

FilmOn:  (1) the order FilmOn violated is clear and unambiguous; (2) proof of noncompliance is

clear and convincing; and (3) FilmOn has not diligently attempted to comply in a reasonable

manner.  Opp'n at 13 (Dkt. No. 95).

      FilmOn does not dispute the evidence Plaintiffs submitted establishing that FilmOn was

streaming Plaintiffs' copyrighted broadcast programming without permission.  Morrow Decl.

¶¶ 2-6, Exs. 1-5 (Dkt. No. 93).  While FilmOn claims halfheartedly that it could not "identify"

how its illegal retransmissions occurred, it never denies that they happened.[1]  Opp'n at 20;

Kotovyy Decl. ¶¶ 11-12 (Dkt. No. 95-3).

    FilmOn also does not deny that its streaming was an intentional violation of Plaintiffs'

rights under the Transmit Clause.  As Plaintiffs demonstrated in their opening memorandum,

after the Supreme Court decided the *Aereo* case, FilmOn asserted that it was "reinventing itself

as a cable company" and boasted that it would be "offering the ability for viewers to watch . . .

ABC, NBC, CBS, and Fox on their computers and mobile devices."  Morrow Decl. Ex. 6.

    But *Aereo* did not condone services like "Teleporter."  On the contrary, it established

unequivocally that retransmission services like "Teleporter" engage in public performance,

irrespective of the device or process used to accomplish the retransmissions.  *Aereo*, 134 S. Ct. at

2508-11.  This requires a copyright license -- a fact that FilmOn now readily admits.  *See* Opp'n

at 9, 15.  FilmOn's violation was thus intentional and deliberate.

    Lastly, FilmOn's violation is clearly within the scope of this Court's prior Injunction.

The Injunction language broadly prohibits all conduct in violation of the Copyright Act:

> Defendant [FilmOn] . . . [IS] HEREBY PERMANENTLY
> RESTRAINED AND ENJOINED from infringing, by any means,
> directly or indirectly, any of plaintiffs' exclusive rights under
> Section 106(1)-(5) of the Copyright Act, including but not limited
> to through the streaming over mobile telephone systems and/or the
> Internet of any of the broadcast television programming in which
> any Plaintiff owns a copyright.

Injunction ¶ 1.  The Court has already determined that the Injunction language is intentionally

broad and is not limited to the precise technology at issue in the original litigation.  *See* Mem. &

---

[1] It is unclear why Mr. Kutovyy thought it was necessary to "test" the ability of users to access
New York broadcast content in other areas of the country.  According to FilmOn's press release,
the purpose of the new "Teleporter" service is to "teleport" users to different locations by
allowing them to watch programming outside of their local broadcast areaa.  Morrow Decl,
Ex. 7; Boccanfuso Reply Decl. Ex. 8.

Order Granting Mot. to Comply at 13 (Dkt. No. 74) ("[The Injunction's] scope is in no way limited to the precise form of infringement that precipitated the filing of this lawsuit.").  Because FilmOn has admittedly publicly performed Plaintiffs' copyrighted broadcast programs without a license or permission, it has infringed their rights under Section 106, thereby violating the Injunction -- regardless of any alleged differences in the technology it used to infringe.

      For all these reasons, FilmOn's contempt is clear, deliberate, and willful.

## III.    FILMON'S *POST-HOC* EXCUSES FOR ITS CONTEMPT ARE UNAVAILING

      FilmOn's opposition makes multiple excuses for its contempt, none of which has merit.

### A.    FilmOn's Reliance on the Potential Availability of a Section 111 License Fails

#### 1.    FilmOn Knowingly Infringed Plaintiffs' Rights Without a License

      Setting all else aside, one fact is clear with regard to FilmOn's purported Section 111 license -- it does not currently have one.  FilmOn claims to have submitted a request for one to the Copyright Office -- an act taken only after the Court issued the instant OSC -- but none has been granted.  *See* Opp'n at 9.  In reality, FilmOn apparently has filed Statements of Account ("SOA") with the Copyright Office purporting to set forth the statutorily prescribed royalties owed by FilmOn for its Internet retransmissions.  However, the mere filing of a SOA does not create a license or permission to retransmit Plaintiffs' copyrighted programming, as evidenced by the Copyright Office's recent response to the tender by Aereo of SOAs with respect to its illegal retransmission service.  The Copyright Office has informed Aereo that "[i]n the view of the Copyright Office, internet retransmissions of broadcast television fall outside the scope of the Section 111 license" and that "the Office does not believe Aereo qualifies for the Section 111 statutory license . . . ."  Boccanfuso Reply Decl. Ex. 9.  FilmOn's SOAs undoubtedly will receive the same response when processed.

It is the essence of contempt for FilmOn to engage in public performances of Plaintiffs' copyrighted programming based on its unilateral belief that it has a license, when it unequivocally does not.  If FilmOn truly believed it was entitled to do so based on a license, it should have sought advance permission, rather than seeking forgiveness after the fact, as it now does.[2]  *See United States v. Philip Morris USA Inc.*, 287 F. Supp. 2d 5, 14 (D.D.C. 2003).

### 2.        FilmOn Is Not Entitled to a Section 111 License

FilmOn argues that its contempt of this Court's Injunction should be excused because FilmOn qualifies as a "cable system" and is therefore entitled to a compulsory license under Section 111 of the Copyright Act.  17 U.S.C. § 111.  The argument, which is based on a mischaracterization of *Aereo*, has been definitively rejected by the Second Circuit.  Ultimately, Section 111 affords FilmOn no protection for its deliberate violations of the Injunction.

*First*, the Supreme Court did not find that Aereo (which FilmOn claims "embrace[s] the same technology" as FilmOn's current "Teleporter" services, Opp'n at 18) "qualifies as a cable system" or was entitled to a Section 111 license.  On the contrary, the Court held that, because Aereo's activities are "substantially similar" to cable companies, *Aereo*, 134 S. Ct. at 2506, the technological difference between Aereo and traditional cable companies did not exempt Aereo from publicly performance liability when it transmitted copyrighted broadcast television programs to subscribers over its Internet retransmission service without authorization.  *Id.* at 2507.  The Supreme Court's finding that Aereo *is like* a cable system for purposes of public performance liability under the Transmit Clause is a far cry from a holding that Aereo (or any

---

[2] FilmOn asserts in its opposition that it intends to move the Court "at an appropriate time to modify or vacate the Injunction," based on its contention that under the *Aereo* decision it is entitled to a compulsory license under Section 111.  Opp'n at 4.  This assertion is an admission that FilmOn deliberately violated an injunction that it knew prohibited retransmission of broadcasts of Plaintiffs' programming in the hopes that it would obtain a license in the future.

similar service) *is* a cable system as defined by the more narrowly drafted (and contemporaneously enacted) Section 111.  17 U.S.C. § 111(f)(3).  The Supreme Court never suggested that Aereo was entitled to a Section 111 license.  Indeed, the question was not even presented.[3]

*Second*, the Second Circuit has rejected the argument that an Internet television retransmission service is entitled to a compulsory license under Section 111.  *ivi*, 691 F.3d at 282-83.  In *ivi*, the Court conducted a thorough analysis of the statutory text, legislative history and interpretive decisions by the Copyright Office, which is charged with enforcing Section 111, and, on that basis, held that "Congress did not . . . intend for § 111's compulsory license to extend to Internet transmissions."  *Id.* at 282.

In reaching that decision, the Court rejected the argument that Internet retransmission services should be entitled to Section 111 licenses because they are like cable companies.  "[I]f Congress had intended to extend § 111's compulsory license to Internet retransmissions," the Court held, "it would have done so expressly -- either through the language of § 111 as it did for microwave retransmissions or by codifying a separate statutory provision as it did for satellite carriers."  *Id.* (citing 17 U.S.C. §§ 111, 119).  Microwave and satellite retransmission systems both obviously transmit broadcast television programming to subscribers just like cable systems

---

[3] Finding that Aereo's (or FilmOn's) service operates like a cable company and thus performs publicly under the Transmit Clause, but is not entitled to a compulsory license under Section 111 without showing that it meets the statutory and other requirements, is entirely consistent with the approach of the Copyright Act to regulating service providers that retransmit broadcast television programming to subscribers.  As Congress expressly noted, the approach of the Act is to set forth the copyright owner's exclusive rights under Section 106, including the public performance right, in the broadest possible terms, *see* H.R. Rep. No. 94-1476, at 61-62, while providing limited statutory licenses to statutorily defined classes of service providers that are narrowly construed, in light of the particular interests they were crafted to serve.  *See Supplementary Report of the Register of Copyrights on the General Revision of U.S. Copyright Law: 1965 Revision Bill*, at 13-14 (Comm. Print 1965) (comments of the Register of Copyrights).

do, and are deemed to be publicly performing under the Transmit Clause, but the proprietors of such businesses were required to go to Congress to obtain compulsory licensing protection.

As a matter of policy, the Court concluded:  "Extending § 111's compulsory license to Internet retransmissions . . . would not fulfill or further Congress's statutory purpose.  Internet retransmission services are not seeking to address issues of reception and remote access to over-the-air television signals.  They provide not a local but a nationwide (arguably international) service."  *ivi*, 691 F.3d at 282.  Nothing about the Supreme Court's *Aereo* opinion calls into question the Second Circuit's reasoning.

Moreover, the *ivi* decision remains controlling law.  The Supreme Court denied *certiorari* in *ivi*, 133 S. Ct. 1585, and *Aereo* does not even mention -- let alone overrule -- *ivi*.  *Aereo* also does not discuss the Copyright Office rulings that were at issue and carefully analyzed in *ivi*, nor does it discuss or analyze any of the issues presented.  Therefore, it cannot be read as overruling *sub silentio* the careful analysis that this Court and later the Second Circuit conducted in *ivi*.

*Third*, FilmOn's purported Section 111 defense was adjudicated by the Injunction, which the Court entered in August 2012.  The Injunction specifically provides that it resolves "[a]ll claims and defenses in this action[.]"  *See* Injunction ¶ 3.  That includes FilmOn's unsuccessful defense under Section 111, *see* Dkt. No. 44, at 5 (FilmOn's Answer to Pls.' First Am. Compl.) (Third Affirmative Defense) ("Defendants is exempt from liability for copyright infringement because it is a 'cable system' as defined in Section 111(f) of the Copyright Act . . . .").  Having consented to an adverse judgment with respect to its Section 111 defense two years ago, FilmOn obviously cannot assert it now.

**B.      This Court Is the Proper Forum to Adjudicate Issues Raised by the OSC**

FilmOn's contention that it is entitled to litigate issues relating to its contempt of this Court's injunction in California and/or Washington D.C. is meritless.  Just because FilmOn is violating three injunctions does not mean that it can pick and choose which one will be enforced.

This Court is uniquely positioned to address the issues raised by the OSC.  The injunction in this case bars FilmOn from infringing any of Plaintiffs' exclusive rights under Section 106(1)-(5) of the Copyright Act, and it is the *only* injunction currently in effect against FilmOn that includes the Second Circuit.  *See, e.g.*, *Fox Television Stations, Inc., et al. v. FilmOn X LLC, et al.*, 966 F. Supp. 2d 30, 52 (D.D.C. 2013) (nationwide injunction excluding Second Circuit); *Fox Television Stations, Inc., et al. v. BarryDriller Content Sys., PLC, et al.*, 915 F. Supp. 2d 1138, 1148 (C.D. Cal. 2012) (injunction limited to Ninth Circuit).  FilmOn claims it limited, or intended to limit, its "Teleporter" service to stream Plaintiffs' copyrighted programming within the Second Circuit only.  *See* David Decl. ¶ 11 (Dkt. No. 95-2); Kutovvy Decl. ¶¶ 5-14.  And it was FilmOn's streaming of New York City broadcast signals nationwide that necessitated the OSC.  Thus, the OSC concerns New York-centric conduct that violates an injunction within the Second Circuit.

Moreover, as the Court is aware, the applicability of the Injunction to the technology that FilmOn copied from Aereo was in question after Judge Nathan and later the Second Circuit held that Aereo's service did not infringe plaintiffs' copyrights.  *See* Dkt. No. 74 at 14-15.  This made it necessary for Plaintiffs to sue FilmOn in other jurisdictions in order to prevent its ongoing infringement.  However, as noted above, the Supreme Court opinion holds unequivocally that Aereo's service infringes Plaintiffs' exclusive rights under the Copyright Act.  *Aereo*, 134 S. Ct. at 2503, 2511.  Since FilmOn claims its technology is in all legally relevant aspects identical to Aereo's, and since the Supreme Court held that the specific technology used to stream the

programming did not matter anyway, *id.* at 2509, there is no longer any question that FilmOn's

streaming is infringing and therefore prohibited by this Court's Injunction.

C.    **FilmOn Is a Repeat Contemnor Whose After-The-Fact Promise to Abide by the Injunction Comes Too Late**

FilmOn's *post-hoc* compliance with the Injunction shows neither lack of contempt nor an

effort to comply.  It simply shows FilmOn was caught and is trying to avoid the consequences of

its contempt.  FilmOn's actions ring particularly hollow given its repeated violations of

injunctions with respect to its streaming services, in the wake of which FilmOn has trotted out

virtually identical, empty excuses for its contumacious actions.

FilmOn has been found to be in contempt of this Injunction, as well as the preliminary

injunction issued by Judge Collyer.  Dkt. No. 74; *Fox Television Stations, Inc., et al. v. FilmOnX,*

*LLC*, Case No. 13-cv-00758-RMC (D.D.C) ("*FilmOnX*"), Dkt. No 61 (Ex. A hereto).  In both

instances, FilmOn tried to excuse its contempt by claiming the order was ambiguous.  *See* Dkt.

No. 56 at 4; *FilmOnX*, Dkt. No. 56 at 7 (Ex. B hereto).  FilmOn's excuses were rejected.  Dkt.

No. 74 at 13-15; *FilmOnX*, Dkt. No. 61 at 2-3.  Indeed, less than a year ago, this Court stated:

"As an initial matter, the Injunction clearly prohibits FilmOn from 'infringing, by any means,

directly or indirectly,' any of plaintiffs' copyrights in their broadcast television programming.

(Injunction ¶ 1.)  Its scope is in no way limited to the precise form of infringement that

precipitated the filing of this lawsuit."  Dkt. No. 74 at 13.  Despite the clarity of the Injunction,

and the unequivocal statement as to its scope, FilmOn makes the same "ambiguity" defense,

arguing that it did not think its "Teleporter service" was governed by the Injunction.  Opp'n at

14-15.

FilmOn's desire to re-litigate its meritless Section 111 defense does not entitle it to defy

this Court's injunction.  In adopting this approach, FilmOn shows the same contempt for the

Injunction as it did for Judge Collyer's injunction.  In *FilmOnX*, Judge Collyer had enjoined

FilmOnX in all circuits nationwide except the Second Circuit from streaming, transmitting or

otherwise publicly performing plaintiffs' copyrighted programming over the Internet.  *FilmOnX*,

Dkt. No. 34 (Ex. C hereto).  When a district court denied an injunction against Aereo in Boston,

FilmOnX unilaterally resumed streaming plaintiffs' copyrighted programming in the First Circuit

in violation of Judge Collyer's injunction.  *FilmOnX*, Dkt. No. 61.  FilmOnX claimed that it

expected Judge Collyer to modify the injunction in response to FilmOn's later-filed motion.

*Id.* at 3.  Judge Collyer held that "such an expectation was both erroneous and irrelevant . . . .

Defendants must comply with the Injunction unless and until it is modified."  *Id.*

Here, the contempt is even clearer as FilmOn did not even pay lip service to moving to

modify the Injunction.  FilmOn violated the Injunction and only stopped with the issuance of the

OSC.  FilmOn's *modus operandi* of intentionally violating injunctions when it decides the law

may have changed is improper and belies any claim of good faith error or attempted compliance.

### D.   Mr. David Is Bound by the Injunction

Finally, FilmOn's contention that Mr. David cannot be held in contempt for violating the

Injunction because he is not a party to it (Opp'n at 21) is contrary to the plain terms of the

Injunction, and has already been rejected by this Court.  The Injunction enjoins FilmOn, "its

affiliated companies, and all of its officers, directors, agents, servants, and employees, and all

natural and corporate persons in active concert or participation or in privity with any of them."

Injunction ¶ 1.  Accordingly, Mr. David, who is FilmOn's CEO and directs its operations, is

plainly bound, as this Court found when rejecting FilmOn's identical argument in response to its

prior OSC re Contempt.  *See* Dkt. No. 74 at 21.

### IV.   CONCLUSION

For these reasons, the Court should hold FilmOn in contempt.

By:  /s/ Peter L. Zimroth
     Peter L. Zimroth
     ARNOLD & PORTER LLP
     399 Park Avenue
     New York, New York 10022
     (212) 715-1000
     peter.zimroth@aporter.com

     -- and --

     Robert Alan Garrett
     Hadrian R. Katz
     C. Scott Morrow
     ARNOLD & PORTER LLP
     555 Twelfth Street, N.W.
     Washington, D.C. 20004
     (202) 942-5000
     robert.garrett@aporter.com
     hadrian.katz@aporter.com
     scott.morrow@aporter.com

     Counsel for Plaintiffs

Dated: July 17, 2014

## CERTIFICATE OF SERVICE

This is to certify that I have on this, the seventeenth day of July 2014, caused to be served

the herein Reply Memorandum of Plaintiffs in Support of Order to Show Cause and Reply

Declaration of Anthony D. Boccanfuso on the following parties via personal service and by

email:

Ryan Baker, Esq.
Jaime Marquart, Esq.
10990 Wilshire Blvd, Fourth Floor
Los Angeles, CA 90024

rbaker@bakermarquart.com
jmarquart@bakermarquart.com

424.652.7800 tel
424.652.7850 fax

Counsel for FilmOn.Com, Inc. and Mr. Alkiviades David

_____
Eric D. Mason

EXHIBIT A

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

FOX TELEVISION STATIONS, INC.,
*et al.*,

              **Plaintiffs,**

         **v.**

FILMON X LLC, *et al.*,

             **Defendants.**
_____

)
)
)
)
)
)
)
)
)
)
)
)

**Civil Action No. 13-758 (RMC)**

## ORDER

On September 5, 2013, this Court enjoined Defendants from streaming,

transmitting, or otherwise publicly performing any copyrighted programming over the Internet.

Preliminary Injunction Order [Dkt. 34] (Injunction) ¶ 2. The Injunction applies nationwide,

except within the geographic boundaries of the United States Court of Appeals for the Second

Circuit. *Id.* ¶ 3. It is uncontested that on or around October 10, 2013, Defendants aired

copyrighted material in Boston, Massachusetts, in defiance of the Injunction. Thereafter, the

Court ordered Defendants to show cause why they should not be held in contempt. *See* Order to

Show Cause [Dkt. 54]. After briefing and oral argument on November 25, 2013, the Court finds

that Defendants aired copyrighted material in Boston in obvious contempt of the Injunction.

Courts have inherent authority to enforce compliance with their orders through

contempt proceedings. *Chabad v. Russian Fed'n*, 915 F. Supp. 2d 148, 151 (D.D.C. 2013);

*accord FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*, 637 F.3d 373, 377 (D.C.

Cir. 2011) ("It is incontrovertible that federal courts enjoy inherent contempt power."); *see also*

18 U.S.C. § 401(3) (statutory authority to impose sanctions for contempt). In civil contempt

proceedings, sanctions may be imposed "for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Local 28 of Sheet Metal Workers v. EEOC*, 478 U.S. 421, 443 (1986) (citations and internal quotation marks omitted); *Walker v. Ctr. for Food Safety*, 667 F. Supp. 2d 133, 136 (D.D.C. 2009). "[U]nlike discovery sanctions, civil contempt sanctions may not be punitive— they must be calibrated to coerce compliance or compensate a complainant for losses sustained." *In re Fannie Mae Secs. Litig.*, 552 F.3d 814, 823 (D.C. Cir. 2009); *accord In re Magwood*, 785 F.2d 1077, 1081 (D.C. Cir. 1986). "The intent of the recalcitrant party is irrelevant." *Food Lion, Inc. v. United Food & Commercial Workers Int'l Union*, 103 F.3d 1007, 1016 (D.C. Cir. 1997).

On October 8, 2013, Judge Nathaniel M. Gorton of the District of Massachusetts declined to enjoin Aereo, Inc., Defendants' competitor, from using the same technology to air copyrighted programming. *Hearst Stations, Inc. v. Aereo, Inc.*, No. 13–cv–11649, 2013 WL 5604284, at *9 (D. Mass. Oct. 8, 2013). Defendants jumped to air competing copyrighted programming in Boston, despite the Injunction. Defendants' assertion that they were merely "testing" equipment is, even if credited, totally unacceptable, and the Court finds that Defendants engaged in knowing and contemptuous disregard of the Injunction. This Court has great respect for the learned judge in Massachusetts, but Defendants' argument that Judge Gorton's opinion reflects the law of the First Circuit is specious. Even district court judges on the same court may issue divergent opinions. Further, Defendants argue disingenuously that the Court's Injunction was ambiguous. It was not:

> 2. Defendants . . . are preliminarily enjoined from *streaming, transmitting, retransmitting, or otherwise publicly performing, displaying, or distributing any Copyrighted Programming over the Internet* . . . via web applications . . . via portable devices . . . or by means of any device or process . . . .

2

    3.  This Preliminary Injunction applies throughout the United States pursuant to 17 U.S.C. § 502, with the exception of the geographic boundaries of the United States Court of Appeals for the Second Circuit.

Injunction ¶¶ 2–3 (emphasis added).

        Defendants may have anticipated that the Court would modify the Injunction, but such an expectation was both erroneous and irrelevant.  *See* Order [Dkt. 54].  Defendants must comply with the Injunction unless and until it is modified.

        Plaintiffs cogently argue that Defendants have exhibited clear disregard of this Court by their contemptuous conduct and statements; have previously been sanctioned with a monetary penalty by a New York court for similar disregard; and the Court should impose a sanction of $10,000 for Defendants' instant contempt, which lasted one day, and $20,000 per day for any instances of future contempt.  The Court declines to impose an immediate $10,000 sanction because the contempt was short-lived and has not been repeated.  However, the clarity of the initial contempt requires a monetary sanction upon any further contemptuous conduct.  Accordingly, because Defendants engaged in clear contempt by knowingly and intentionally streaming, transmitting, retransmitting, or otherwise publicly performing, displaying, or distributing Copyrighted Programming over the Internet outside the geographic boundaries of the U.S. Court of Appeals for the Second Circuit, it is hereby

        **ORDERED** that Defendants shall be fined $20,000 per day for any future violation of the Injunction; and it is

        **FURTHER ORDERED** that the Court's Order to Show Cause [Dkt. 54] is **DISCHARGED**; and it is

**FURTHER ORDERED** that Defendants' Motion for Reconsideration of the Court's Order on the Motion to Modify the Injunction [Dkt. 55] is **DENIED**.[1]

**SO ORDERED.**

Date: November 26, 2013                                    _____/s/_____
                                                          ROSEMARY M. COLLYER
                                                          United States District Judge

---

[1] FilmOn X previously filed a motion to modify the Court's Preliminary Injunction, Dkt. 52, and the Court denied the motion on October 15, 2013, Dkt. 54. The Court denies FilmOn X's motion for reconsideration for the reasons set forth in its October 15, 2013 Order.

EXHIBIT B

# UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

---

FOX TELEVISION STATIONS, INC., et al.

                    *Plaintiffs/Counter-Defendants*,

                          v.

FILMON X LLC, et al.

                    *Defendants/Counter-Plaintiffs*.

Civil No. 1:13-cv-00758 (RMC)

Hon. Rosemary M. Collyer

---

## DEFENDANT FILMON X'S SUPPLEMENTAL RESPONSE TO COURT'S ORDER TO SHOW CAUSE REGARDING CONTEMPT

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 1

ARGUMENT ................................................................................................................................. 2

      A.     The September 5 Order Does Not Clearly And Unambiguously Prohibit FilmOn X From Operating In The First Circuit In Compliance With *Hearst.* .................... 3

      B.     Plaintiffs Cannot Uphold Their Burden Of Proving By Clear And Convincing Evidence That The Purposes Of Civil Contempt Are Not Satisfied Here ............. 4

      C.     FilmOn X Has Complied and Continues to Comply Substantially In Good Faith With The Order ........................................................................................................ 7

      D.     Plaintiffs Cannot Uphold Their Burden Of Proving Beyond A Reasonable Doubt That FilmOn X Is Liable For Criminal Contempt .................................................. 9

CONCLUSION ............................................................................................................................ 11

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Al-Adahi v. Obama,*
   672 F. Supp. 2d 114 (D.D.C. 2009) ........................................................................9

*Armstrong v. Executive Office of the President,*
   1 F.3d 1274 (D.C.Cir. 1993) .................................................................................3

*Brotherhood of Locomotive Firemen and Enginemen v. Bangor & Aroostook Railroad*
   *Company,*
   380 F.2d 570 (D.C. Cir. 1967) ........................................................................7, 8, 9

*Common Cause v. Nuclear Regulatory Comm'n,*
   674 F.2d 921 (D.C. Cir.1982) .................................................................................3

*Hearst Stations Inc. d/b/a WCVB-TV v. Aereo, Inc.,*
   Civ. No. 13-11649-NMG (D.Mass. Oct. 8, 2013) ........................................ passim

*In re Fannie Mae Secs. Litig.,*
   552 F.3d 814 (D.C. Cir. 2009) .................................................................................5

*In re Magwood,*
   785 F.2d 1077 (1986) ........................................................................................5, 6, 9

*Int'l Union, United Mine Workers of Am. v. Bagwell,*
   512 U.S. 821 (1994) .................................................................................................9

*N. L. R. B. v. Blevins Popcorn Co.,*
   659 F.2d 1173 (D.C. Cir. 1981) ............................................................................10

*NAACP, Jefferson Cnty. Branch v. Brock,*
   619 F. Supp. 846 (D.D.C. 1985) .............................................................................7

*S.E.C. v. Bilzerian,*
   112 F. Supp. 2d 12 (D.D.C. 2000) ..........................................................................3

*S.E.C. v. Life Partners, Inc.,*
   912 F. Supp. 4 (D.D.C. 1996) .................................................................................2

*Sheet Metal Workers v. EEOC,*
   478 U.S. 421 (1986) .................................................................................................5

*Spallone v. United States,*
   493 U.S. 265 (1990) .................................................................................................2

i     DEFENDANT FILMON X'S RESPONSE
TO COURT'S ORDER TO SHOW CAUSE

*Teamsters Local Union No. 96 v. Washington Gas Light Co.*,
    466 F. Supp. 2d 360 (D.D.C. 2006) ....................................................................................2, 3

*United States v. United Mine Workers of Am.*,
    330 U.S. 258 (1947)..............................................................................................................10

*United States v. Young*,
    107 F.3d 903 (D.C.Cir. 1997) .........................................................................................3, 10

*Washington Metro. Area Transit Auth. v. Amalgamated Transit Union, Nat. Capital*
    *Local Div. 689*,
    531 F.2d 617 (D.C. Cir. 1976) ...........................................................................................7, 9

# INTRODUCTION

FilmOn X[1] submits this supplemental brief in response to this Court's October 15, 2013 Order to Show Cause why FilmOn X should not be held in contempt (the "OSC"). This Court had originally directed FilmOn X to file this brief by "no later than October 21, 2013." [Dkt. 54 at 3.] Although FilmOn X subsequently filed a motion for reconsideration on October 17 and submitted a declaration from Alkiavides David at that time in connection with its motion to modify the injunction, FilmOn X has not previously attempted to fully brief this Court on the legal authority and factual analysis that governs any contempt ruling on the OSC. Thus, FilmOn X respectfully requests that this Court consider this supplemental brief.

Contempt is a drastic remedy. For several independent reasons, this Court should not hold FilmOn X in contempt. As an initial matter, the preliminary injunction issued by this Court on September 5, 2013 (the "Order")—which only applies to a "public[] perform[ance]"—may reasonably be interpreted as not barring FilmOn X from operating in the First Circuit where a district court has ruled that a substantially identical service operated by Aereo, Inc. ("Aereo") does not enable public performances; rather the performances are private. In any event, even assuming the Order clearly and unambiguously bars FilmOn X from engaging in the exact same conduct as Aereo in the First Circuit, Plaintiffs have not and cannot uphold their burden of proving that FilmOn X should be held in civil or criminal contempt. Plaintiffs cannot show that the extreme remedy of contempt is necessary to coerce FilmOn X into complying with the Order, to compensate plaintiffs for non-existent losses attributable to alleged violation of the Order, or to punish FilmOn X for willful misconduct.

---

[1] "FilmOn X" or "Defendants" refers collectively herein to defendants FilmOn X LLC, FilmOn.TV Networks, Inc., FilmOn.TV, Inc. and FilmOn.com, Inc.

DEFENDANT FILMON X'S RESPONSE
TO COURT'S ORDER TO SHOW CAUSE

To the contrary, FilmOn X has substantially complied with the Order and has promptly and voluntarily taken steps to ensure on-going compliance with the Order. As set forth in the Declarations of Alkiviades David filed on September 12 and October 17, 2013, FilmOn X has consistently acted to ensure ongoing compliance with the Order. [*See* dkt. 43, 55-2.] FilmOn is and has been voluntarily complying with that order. Although certain copyrighted programming was inadvertently accessible in the First Circuit for some period of time following the ruling of the Massachusetts District Court in *Hearst Stations Inc. d/b/a WCVB-TV v. Aereo, Inc.*, Civ. No. 13-11649-NMG (D.Mass. Oct. 8, 2013) ("*Hearst*") due to testing, FilmOn X immediately "discontinued testing in the First Circuit" upon learning that a limited number of users in the First Circuit may have been able to access some of Plaintiffs' copyrighted programming. [Dkt. 55-2 at ¶¶ 7-8.] It deactivated that testing well before this Court's October 15 ruling and before Plaintiffs raised any objection. Accordingly, it would be patently improper to hold FilmOn X in civil or criminal contempt.

## ARGUMENT

"The judicial contempt power is a potent weapon that courts rightly impose with caution." *Teamsters Local Union No. 96 v. Washington Gas Light Co.*, 466 F. Supp. 2d 360, 362 (D.D.C. 2006) (internal quotations omitted). The "extraordinary nature" of the remedy of civil contempt leads courts to "impose it with caution." *S.E.C. v. Life Partners, Inc.*, 912 F. Supp. 4, 11 (D.D.C. 1996). Moreover, in light of its extraordinary nature, district courts are required "to use the least possible power adequate to the end proposed" in selecting which sanctions are appropriate. *See Spallone v. United States*, 493 U.S. 265, 276 (1990).

Here, Plaintiffs simply cannot uphold their steep burden of proving that FilmOn X should be either in either civil or criminal contempt. At worst, FilmOn X's testing of its software

inadvertently allowed a limit number of users in the First Circuit to access copyrighted programming for a brief period of time after the *Hearst* decision.  Upon discovering that this error had occurred, FilmOn X immediately and voluntarily took corrective action before Plaintiffs brought this issue to this Court's attention.  Under these circumstances, it would be inappropriate to exercise the extreme remedy of contempt.

**A.**      **The September 5 Order Does Not Clearly And Unambiguously Prohibit FilmOn X From Operating In The First Circuit In Compliance With *Hearst*.**

As a threshold matter, it would not be fair to hold FilmOn X in civil or criminal contempt because the September 5 Order is itself unclear and ambiguous.  To justify a finding of contempt, the party seeking contempt must demonstrate that "'the putative contemnor has violated an order that is clear and unambiguous.'" *Armstrong v. Executive Office of the President,* 1 F.3d 1274, 1289 (D.C.Cir. 1993) (internal quotations omitted).  In determining whether an order is clear and reasonably specific, courts apply "an objective standard that takes into account both the language of the order and the circumstances surrounding the issuance of the order." *United States v. Young,* 107 F.3d 903, 907 (D.C.Cir. 1997).  "This requirement of clarity derives from concepts of fairness and due process." *S.E.C. v. Bilzerian,* 112 F. Supp. 2d 12, 28 (D.D.C. 2000).  "The violation must be proved by clear and convincing evidence, and ambiguities in the underlying order should be resolved in favor of the alleged contemnor. *See Common Cause v. Nuclear Regulatory Comm'n,* 674 F.2d 921, 927-28 & n. 13 (D.C.Cir.1982); *Teamsters Local Union No. 96 v. Washington Gas Light Co.*, 466 F. Supp. 2d 360, 363 n.4 (D.D.C. 2006) (refusing to hold a party in contempt because the order at issue was not sufficiently clear and unambiguous).

While this Court found under the law of the D.C. Circuit that FilmOn X's technology likely does infringe Plaintiffs' exclusive public performance rights, this Court did not purport to rule on the law of any other circuit.  The September 5 Order only prohibits FilmOn X from

"publicly performing" the Plaintiffs' copyrighted programming, but does not define that term.  It simply states that "Defendants . . . are preliminarily enjoined from streaming, transmitting, retransmitting, or otherwise ***publicly performing***, displaying, or distributing any Copyrighted Programming over the Internet . . . ."  [Dkt. 34 at 2 (emphasis added).]  Importantly, the Order itself does not expressly contemplate the effect of subsequent court decisions on the undefined term "publicly performing" in particular jurisdictions.

Here, the parties have vigorously contested the meaning of a public as opposed to a private performance and courts in different jurisdictions have reached different opinions on the subject.  In light of the recent *Hearst* decision, which was issued after the September 5 Order and found that a service analogous to FilmOn X's enables only private performance, the Order may be read so as to not prohibit FilmOn X from providing access to Plaintiffs' programming in the First Circuit.  Ultimately, while this Court may disagree with *Hearst's* reasoning, it is not patently unreasonable to interpret the term "publicly performing" in the September 5 Order in a manner that is consistent with decisions in particular jurisdictions that are directly on point (as is the case with *Hearst*).  Indeed, under these unique circumstances, it would not be fair to hold FilmOn X in contempt based on ambiguities in the September 5 Order and subsequent judicial decisions.

**B.**     **Plaintiffs Cannot Uphold Their Burden Of Proving By Clear And Convincing Evidence That The Purposes Of Civil Contempt Are Not Satisfied Here**

Even assuming this Court finds that the September 5 Order is clear and free of any ambiguity (it is not), the extreme remedy of civil contempt is still inappropriate.  Although the Order should not be interpreted as prohibiting FilmOn X from operating in the First Circuit in compliance with *Hearst*, FilmOn X has acted cautiously to ensure on-going compliance with the

Order. It does not currently make Plaintiffs' programming available in the First Circuit and has voluntarily taken prompt corrective action where appropriate.

Under settled U.S. Supreme Court authority, courts employ civil contempt sanctions "for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Sheet Metal Workers v. EEOC,* 478 U.S. 421, 443 (1986) (internal quotations omitted). "Unlike discovery sanctions, civil contempt sanctions may not be punitive—they must be calibrated to coerce compliance or compensate a complainant for losses sustained." *In re Fannie Mae Secs. Litig.,* 552 F.3d 814, 823 (D.C. Cir. 2009); *see also In re Magwood,* 785 F.2d 1077, 1081 (1986) ("Civil contempt sanctions are employed only to *coerce compliance* with the court's order or to *compensate* an injured party for losses sustained because of the contemptuous behavior. The sanctions in a civil contempt must not be punitive."). Neither of those purposes would be served here by a finding of contempt.

First, there is no need to "coerce" FilmOn X into complying with the September 5 Order. FilmOn is and has been voluntarily complying with that Order. Although certain copyrighted programming was inadvertently accessible in the First Circuit due to testing, FilmOn X immediately "discontinued testing in the First Circuit" upon learning that a limited number of users in the First Circuit may have been able to access some of Plaintiffs' copyrighted programming. [Dkt. 55-2 at ¶¶ 7-8.] It discontinued that testing voluntarily before this Court, on October 16, denied FilmOn X's motion to modify the injunction. [*Id*. at ¶ 8.] "No testing has occurred since." [*Id*.] "Currently, users who attempt to access Defendants' programming covered by the Order outside of the geographic limits of the Second Circuit are denied access. Defendants continue to take steps to ensure that this remains the case going forward." [*Id*. at ¶ 9.] Thus, there simply is no need to "coerce" compliance through the extraordinary contempt

5      DEFENDANT FILMON X'S RESPONSE
       TO COURT'S ORDER TO SHOW CAUSE

remedy in light of FilmOn X's current and on-going compliance with the injunction. *See In re Magwood*, 785 F.2d at 1082 ("If a sanction operates whether or not a party remains violation of the court order, it obviously does not coerce any compliance").

Second, Plaintiffs have not shown and cannot show that they have suffered any actual losses attributable to FilmOn X's alleged violation of the September 15 Order. "Compensatory civil contempt reimburses the injured party for losses and expenses incurred because of the contemptuous conduct.  This includes losses attributable to the violation of expenses reasonably and necessarily incurred in the attempt to enforce compliance." *See In re Magwood*, 785 F.2d at 1082-83.  There are no such losses here.

At worst, FilmOn X inadvertently allowed "a limited number of users in the First Circuit . . . to access some of [Plaintiffs'] Copyrighted Programming" over a span of two to three days. (Dkt. 55-2 at ¶ 8.)  There is no way Plaintiffs could prove, much less quantify, any losses sustained as a proximate result of this brief incident.  All of the alleged irreparable harm that Plaintiffs originally identified in support of their motion for a preliminary injunction is clearly inapplicable.  Plaintiffs surely cannot show any harm to their net worth by the mere fact that a small number of users may have been able to access their programming on FilmOn X for a brief period of time in Boston and elsewhere in the First Circuit.  Nor can Plaintiffs reasonably prove that their leverage either in local advertising negotiations or in negotiations over retransmission consent agreements with cable, satellite, or telecommunications providers has been damaged by an alleged violation of the Order.  Plaintiffs' ability to develop a lawful market for Internet distribution of television programing has not been damaged by an alleged violation of the Order.

In any event, Plaintiffs cannot prove that they suffered any loss in revenue or incurred other losses from FilmOn X's testing of its system in the First Circuit for a brief period.  Because

Case 1:13-cv-00758-RMB   Document 56   Filed 10/21/13   Page 32 of 40

Plaintiffs cannot prove by clear and convincing evidence that the underlying purposes of civil contempt are not satisfied, it would be improper for this Court to hold FilmOn X in contempt.

**C.**  **FilmOn X Has Complied and Continues to Comply Substantially In Good Faith With The Order**

An order of contempt also is inappropriate here because FilmOn X has worked diligently and in good faith to comply with the terms of the Order. Courts of this circuit have considered good faith compliance efforts as a defense, which calls for mitigation or elimination of contempt sanctions. *See NAACP, Jefferson Cnty. Branch v. Brock*, 619 F. Supp. 846, 850 (D.D.C. 1985); *see also Washington Metro. Area Transit Auth. v. Amalgamated Transit Union, Nat. Capital Local Div. 689*, 531 F.2d 617, 621-22 (D.C. Cir. 1976) ("*WMATA*"); *Brotherhood of Locomotive Firemen and Enginemen v. Bangor & Aroostook Railroad Company*, 380 F.2d 570, 582 (D.C. Cir. 1967). Because FilmOn X continues to comply with the Order, this Court should not find FilmOn X in contempt; nor are any sanctions warranted.

The D.C. Circuit recognizes that "[e]valuation of good faith efforts to comply, once raised, is necessary to determine the possibility of compliance" and should also "be considered in mitigation of penalty" or elimination of the penalty in full. *See WMATA*, 531 F.2d at 621-22. The court in *WMATA* relied on previous authority in the D.C. Circuit to support its decision, including *Brotherhood of Locomotive Firemen and Enginemen v. Bangor & Aroostook Railroad Company*, 380 F.2d 570, 582 (D.C. Cir. 1967), for the proposition that "the history of contempt litigation . . . prescribes extreme care and insistence on the full indicia of due process in contempt cases," and that "not only must the District Court consider whether there is indeed a contempt *but also* whether if so, it be of such magnitude as to warrant retention, *in part or to any extent*, of the coercive fine originally provided for in contemplation of an out right refusal to obey" (emphasis added). The court in *Brotherhood of Locomotive Firemen and Enginemen*

7       DEFENDANT FILMON X'S RESPONSE
        TO COURT'S ORDER TO SHOW CAUSE

further emphasized flexibility in approach, and that courts considering contempt cases take into

consideration the extent of efforts taken by a party to obey the terms of the outstanding order.

*See id.*

Here, FilmOn X undertook extensive efforts to obey the terms of the Order.  Following

the entry of the Order on September 5, 2013, FilmOn X began taking immediate steps to comply

with the Order.  [Dkt. 55-2 at ¶ 3.)  In fact, by September 12, 2013, FilmOn X had removed all

access to plaintiffs' Copyrighted Programming to users logging on to any of the websites or

mobile applications operated by FilmOn X within any area in the United States outside of the

Second Circuit.  (*Id.* at ¶ 4.)  This continues to be the case, as users who attempt to access

FilmOn X's services from outside the geographic limits of the Second Circuit are denied access

and do not receive the option of accessing any of the unlicensed Copyrighted Programming

subject to the Order.  (*Id.* at ¶ 5.)

Defendants have taken and continue to take measures to ensure that users who attempt to

access FilmOn X's services from outside the geographic limits of the Second Circuit are denied

such access for as long as the Order remains in effect.  (*Id.*)  Indeed, the only instance in which

users could potentially have accessed FilmOn X's services from outside the geographic limits of

the Second Circuit was during the course of a temporary technology check conducted by FilmOn

X over a brief span following the issuance of the *Hearst* opinion.  (*Id.* at 7.)  Though

theoretically users may have been able to briefly access some of the Copyrighted Programming

subject to the Order, once FilmOn X learned of the potential for users to access some of the

Copyrighted Programming, it immediately discontinued its testing.  Furthermore, this temporary

technology check was conducted by FilmOn X in good faith anticipation of the possibility that

the Order would be lifted as applied to the First Circuit, following the U.S. District Court of

8      DEFENDANT FILMON X'S RESPONSE
TO COURT'S ORDER TO SHOW CAUSE

Massachusetts' decision denying the Plaintiffs a preliminary injunction in *Hearst*.  (*Id.* at ¶¶ 6-7.)

Testing took place only so that FilmOn X could begin offering its services immediately if the

Order was modified so as not to include the First Circuit.  (*Id.* at ¶ 7.)  There was no bad faith or

intentional disregard of this Court's order.

Consistent with this Circuit's decisions in *WMATA* and *Brotherhood of Locomotive*

*Firemen and Enginemen* that an equity court evaluate a party's good faith efforts to comply with

a court's order in considering whether to eliminate or mitigate a penalty for non-compliance,

FilmOn X respectfully submits that this court evaluate FilmOn X's substantial good faith efforts

to comply with the Order in considering whether to hold FilmOn X in contempt of the Order.

**D.      Plaintiffs Cannot Uphold Their Burden Of Proving Beyond A Reasonable Doubt**
**That FilmOn X Is Liable For Criminal Contempt**

There is clearly no basis for holding FilmOn X in criminal contempt.  FilmOn X did

not—as Plaintiffs allege—"deliberate[ly] defi[e]" this Court's orders.  [*See* Dkt. 53 at 1.]  To the

contrary, FilmOn X has consistently acted in good faith and has taken prompt steps to ensure

ongoing compliance with the Order.

Unlike civil contempt which is designed to coerce or compensate, "[t]he purpose of a

criminal contempt proceeding is the vindication of the court's authority by *punishing for a past*

*violation of a court order*."  *In re Magwood*, 785 F.2d at 1083 (italics in original).  The Supreme

Court has described criminal contempt sanctions as "punitive" in nature.  *Int'l Union, United*

*Mine Workers of Am. v. Bagwell*, 512 U.S. at 827-28 (1994). As such "[c]riminal contempt

requires both a contemptuous act and a wrongful state of mind." *Al-Adahi v. Obama*, 672 F.

Supp. 2d 114, 117 (D.D.C. 2009) (internal quotations omitted).  Moreover, alleged criminal

contemnors are entitled to many, if not all, of the procedural safeguards typically afforded

ordinary criminal defendants, including the provision for due process insofar as it necessitates

"suitable notice and adequate opportunity to appear and to be heard." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 365 (1947). The burden of proof in criminal contempt proceedings is "beyond a reasonable doubt." *United States v. Young*, 107 F.3d 903, 907 (D.C. Cir. 1997); *N. L. R. B. v. Blevins Popcorn Co.,* 659 F.2d at 1183–84 (D.C. Cir. 1981).

Here, Plaintiffs certainly cannot uphold their burden of proving beyond a reasonable doubt that FilmOn X deliberately defied this Court's Order. FilmOn X has consistently engaged in good faith efforts to comply with the Order and voluntarily took corrective action before Plaintiffs even complained about the testing. FilmOn X did not have a wrongful state of mind. In any event, it would be inappropriate to hold FilmOn X in criminal contempt without an opportunity to be heard in an evidentiary hearing.

///

///

///

///

///

///

///

///

///

///

///

///

///

10    DEFENDANT FILMON X'S RESPONSE
TO COURT'S ORDER TO SHOW CAUSE

## CONCLUSION

For the foregoing reasons, this Court should not hold FilmOn X in contempt.

October 21, 2013

Respectfully submitted,

By: /s/ Ryan G. Baker
      Ryan G. Baker
      BAKER MARQUART LLP
      10990 Wilshire Blvd., Fourth Floor
      Los Angeles, California 90024
      (424) 652-7811 (telephone)
      (424) 652-7850 (facsimile)
      Bar No.: 200344

/s/ Kerry J. Davidson
LAW OFFICE OF KERRY J. DAVIDSON
1738 Elton Road, Suite 113
Silver Spring, Maryland 20903
(301) 586-9516 (telephone)
(866) 920-1535 (facsimile)
Bar No.: 456431

*Attorneys for Defendants and Counterclaim Plaintiffs FilmOn X, LLC, FilmOn.TV, Inc., FilmOn.TV Networks, Inc., and FilmOn.com, Inc.*

EXHIBIT C

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| **FOX TELEVISION STATIONS, INC.,** *et al.*, | ) ) ) |
|  | ) |
| **Plaintiffs,** | ) |
|  | ) |
| **v.** | )   **Civil Action No. 13-758 (RMC)** |
|  | ) |
| **FILMON X LLC,** *et al.*, | ) |
|  | ) |
| **Defendants.** | ) |
| _____ | ) |

## PRELIMINARY INJUNCTION

For the reasons set forth in the Opinion issued contemporaneously herewith, it is hereby

**ORDERED** that Plaintiffs' Motion for Preliminary Injunction, Dkt. 27, is **GRANTED**; and it is

**FURTHER ORDERED** that the preliminary injunction hearing for September 20, 2013, at 2:00 p.m. is converted to a status conference; and it is

**FURTHER ORDERED** as follows:

1.      For purposes of this Preliminary Injunction, the following definitions shall apply:

a.      "Plaintiffs" shall mean Fox Television Stations, Inc., Twentieth Century Fox Film Corporation, Fox Broadcasting Company, NBC Subsidiary (WRC-TV) LLC, NBC Studios LLC, Universal Network Television, LLC, Open 4 Business Productions LLC, Telemundo Network Group LLC, American Broadcasting Companies, Inc., Disney Enterprises, Inc., CBS Broadcasting Inc., CBS Studios Inc., Allbritton Communications Company, and Gannett Co., Inc.

1

       b.     "Defendants" shall mean FilmOnX LLC (formerly known as Aereokiller LLC), FilmOn.TV Networks, Inc., FilmOn.TV, Inc., and FilmOn.com, Inc., whether acting jointly or individually.

       c.     "Copyrighted Programming" shall mean each of those broadcast television programming works, or portions thereof, whether now in existence or later created, including but not limited to original programming, motion pictures and newscasts, in which the Plaintiffs, or any of them, (or any parent, subsidiary, or affiliate of any of the Plaintiffs) owns or controls an exclusive right under the United States Copyright Act, 17 U.S.C. §§ 101 et seq.

     2.     Pending a final resolution of this action, Defendants, and all of their parents, subsidiaries, affiliates, officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of this Order (the "Enjoined Parties") are preliminarily enjoined from streaming, transmitting, retransmitting, or otherwise publicly performing, displaying, or distributing any Copyrighted Programming over the Internet (through websites such as filmon.com or filmonx.com), via web applications (available through platforms such as the Windows App Store, Apple's App Store, the Amazon App Store, Facebook, or Google Play), via portable devices (such as through application on devices such as iPhones, iPads, Android devices, smart phones, or tablets), or by means of any device or process.

     3.     This Preliminary Injunction applies throughout the United States pursuant to 17 U.S.C. § 502, with the exception of the geographic boundaries of the United States Court of Appeals for the Second Circuit.

     4.     Violation of this Preliminary Injunction shall expose Defendants and all other persons bound by this Preliminary Injunction to all applicable penalties, including contempt of Court.

5.      Plaintiffs shall post a bond in the amount of $250,000.00, upon which this injunction will immediately take effect.

6.      Within three court days of the effective date of this Preliminary Injunction, Defendants shall file and serve a report in writing and under oath setting forth in detail the manner and form with which Defendants have complied with the Preliminary Injunction.


Date: September 5, 2013

                                 _____
                                 /s/
                                 ROSEMARY M. COLLYER
                                 United States District Judge

3