UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
CBS BROADCASTING INC., et al.,

               Plaintiffs,

      - against -           **MEMORANDUM AND ORDER**

FILMON.COM, INC.,              10 Civ. 7532 (NRB)

               Defendant.
--------------------------------------X

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

On October 1, 2010, plaintiffs -- which include CBS Broadcasting Inc., NBC Studios LLC, Fox Television Stations, Inc., and ABC Holding Company Inc. -- brought this action against defendant FilmOn.com, Inc., alleging infringement of their copyrights in various programs exhibited over their broadcast television stations.  The case was closed by entry of the Consent Order of Judgment and Permanent Injunction dated August 8, 2012 (the "Injunction").

On July 3, 2014, plaintiffs moved this Court by order to show cause to hold FilmOn.com, Inc. and its Chief Executive Officer, Alkiviades David (collectively, "FilmOn") in civil contempt.  Plaintiffs assert that FilmOn violated the Injunction by using mini-antenna technology (1) to broadcast the networks' copyrighted content within the Second Circuit in violation of the Supreme Court's decision in <u>American Broadcasting Companies,</u>

Inc. v. Aereo, Inc., 134 S. Ct. 2498 (2014) ("Aereo"); and (2) to transmit this programming to regions outside the Second Circuit through use of defendant's "Teleporter" system.  For the reasons herein, we agree with plaintiffs and grant their motion.

## BACKGROUND

Nearly four years ago, plaintiffs initiated the aforementioned action, alleging that FilmOn was streaming their broadcast programming without their authorization, thereby infringing their exclusive copyrights in the programming under Sections 106(1)-(5) of the Copyright Act of 1976, 17 U.S.C. § 101 et seq.  Compl. ¶¶ 1-5.  Plaintiffs sought monetary damages and a permanent injunction against FilmOn's retransmission service.  Id.  In July 2012, after the completion of discovery, the parties reached an agreement to resolve the action, the full terms and conditions of which were set forth in a settlement agreement dated July 31, 2012 (the "Settlement Agreement").  The Settlement Agreement was conditioned upon this Court's entry of a stipulated consent judgment and permanent injunction prohibiting FilmOn from further infringing plaintiffs' copyrights.  Settlement Agreement § 4.1.

Accordingly, on August 8, 2012, we entered the parties' Stipulated Consent Judgment and Permanent Injunction, which permanently enjoined:

> [FilmOn,] its affiliated companies, and all of its
> officers, directors, agents, servants, and employees,
> and all natural and corporate persons in active
> concert or participation or in privity with any of
> them . . . from infringing, by any means, directly or
> indirectly, any of plaintiffs' exclusive rights under
> Section 106(1)-(5) of the Copyright Act, including but
> not limited to through the streaming over mobile
> telephone systems and/or the Internet of any of the
> broadcast television programming in which any
> Plaintiff owns a copyright.

Injunction ¶ 1.  The Injunction further provided that violation of its provisions would expose FilmOn and all other persons bound by the Injunction to "all applicable penalties, including contempt of Court."  Id. ¶ 2.  Finally, it provided that "[t]his Court shall retain continuing jurisdiction over the Parties and the action for purposes of enforcing th[e] [Injunction and Settlement Agreement]."  Id. ¶ 4.

After the issuance of the Injunction, FilmOn launched a video on demand ("VOD") service, which provided subscribers with access to an archive of previously televised programs for streaming "on demand."  On July 2, 2013, plaintiffs moved for an order to show cause why FilmOn should not be found in civil contempt for violating the Injunction based on the VOD service. In a Memorandum and Order dated September 10, 2013, we found that because "FilmOn has offered no evidence whatsoever that they have validly acquired the right to stream plaintiffs' copyrighted programming," FilmOn was in contempt of the

Injunction.  CBS Broad. Inc. v. FilmOn.com, Inc., No. 10 Civ. 7532(NRB), 2013 WL 4828592, at *9 (S.D.N.Y. Sept. 10, 2013). Accordingly, we required defendant to (1) remove all broadcast programming identified by plaintiffs, (2) agree not to stream any of plaintiffs' copyrighted programming using the VOD service, and (3) pay a penalty of $10,000 per day of noncompliance.  Judgment, Oct. 3, 2013 (the "Judgment") ¶ 3.  We also compelled FilmOn to pay $115,046.10 in attorneys' fees. Id. ¶ 4.

On June 25, 2014, while the Injunction remained in place, the Supreme Court decided Aereo.  Aereo operated a system "made up of servers, transcoders, and thousands of dime-sized antennas housed in a central warehouse."  Aereo, 134 S. Ct. at 2503.  A key feature of the Aereo system was that each subscriber had one of these dime-sized antennas dedicated to his personal use.  Id. An Aereo subscriber could visit the Aereo website, select a program for viewing, and stream it to his device with a delay of only a few seconds.  Id.  Petitioners in the Aereo action, which included the broadcast networks who are plaintiffs in the instant case, argued that Aereo infringed their right to "perform" their works "publicly," within the meaning of the Transmit Clause of the Copyright Act.  Id. at 2504 (quoting 17 U.S.C. § 106(4)).

-4-

The Supreme Court found in favor of the broadcast networks, holding "that Aereo 'perform[s]' petitioners' copyrighted works 'publicly,' as those terms are defined by the Transmit Clause" of the Copyright Act.  Id. at 2511.  In so finding, the Court relied on "Aereo's overwhelming likeness to the cable companies targeted by the 1976 amendments" to the Copyright Act and noted that the "sole technological difference between Aereo and traditional cable companies [did] not make a critical difference" in the Court's analysis.  Id. at 2507.  Ultimately, the Supreme Court concluded that "Aereo is not just an equipment supplier" and that its use of the antenna system constituted public performance of the petitioners' protected programming. Id.  This decision overruled the Second Circuit's determination in WNET, Thirteen v. Aereo, Inc., 712 F.3d 676 (2d Cir. 2013), that Aereo's retransmission system did not infringe on the networks' copyrights; therefore, the use of Aereo's technology, which had previously been permissible within the Second Circuit, was henceforth barred.  See Aereo, 134 S. Ct. at 2504, 2511. Aereo did not mention, let alone abrogate, WPIX, Inc. v. ivi, Inc., 691 F.3d 275 (2d Cir. 2012) ("ivi").  That case established the law in the Second Circuit that "Internet

retransmission services do <u>not</u> constitute cable systems under §
111" of the Copyright Act.[1]  <u>Id.</u> at 284 (emphasis added).

Shortly after the <u>Aereo</u> decision, on July 3, 2014,
plaintiffs again applied for an order to show cause why the
Court should not hold FilmOn in contempt for violating the
Injunction.  In this instance, plaintiffs' application was based
on defendant's "operation[] of its 'Teleporter' service and any
other device or process by which it publicly performs
plaintiffs' copyrighted programming."  Order to Show Cause Re
Contempt of Inj. ¶ 2 (July 7, 2014).  FilmOn's Teleporter
service relies on mini-antennas, much like those used by Aereo,
to "allow[] users to virtually view broadcast content from a
distant location that is not necessarily within the local
broadcast geographic area."  Def.'s Mem. of Law in Opp'n to
Order to Show Cause Re Contempt of Inj. ("Def.'s Opp'n") at 10.
Plaintiffs have requested (1) that FilmOn be ordered immediately
to cease offering plaintiffs' copyrighted programming to
subscribers and (2) that the Court impose coercive penalties for
defendant's violation of the Injunction.  Mem. of Pls. in Supp.
of Order to Show Cause at 5.

---

[1] Section 111 of the Copyright Act creates a licensing regime and "permit[s]
cable systems to publicly perform and retransmit signals of copyrighted
television programming to its subscribers, provided they pay royalties at
government-regulated rates and abide by the statute's procedures." <u>ivi</u>, 691
F.3d at 278 (citing 17 U.S.C. § 111).

Plaintiffs' motion for an order to show cause was fully briefed by July 17, 2014, and we held oral argument on the pending motion on July 22, 2014.

## DISCUSSION

"[T]he district courts have the inherent power to find a party in contempt for bad faith conduct violating the court's orders." S. New England Tel. Co. v. Global NAPs Inc., 624 F.3d 123, 144 (2d Cir. 2010). "A party may be held in civil contempt for failure to comply with a court order if '(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner.'" Utica Coll. v. Gordon, 389 Fed. App'x 71, 72 (2d Cir. 2010) (quoting Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 655 (2d Cir. 2004)). Upon finding that a party is in civil contempt, this Court retains "broad discretion to fashion an appropriate coercive remedy . . . based on the nature of the harm and the probable effect of alternative sanctions." City of New York v. Venkataram, No. 06 Civ. 6578(NRB), 2012 WL 2921876, at *3 (S.D.N.Y. July 18, 2012) (quoting E.E.O.C. v. Local 28 of Sheet Metal Workers Int'l Ass'n, 247 F.3d 333, 336 (2d Cir. 2001)). The purposes of civil contempt sanctions are twofold: to coerce

-7-

a defendant into compliance with a court order and to compensate a plaintiff for losses incurred.   Local 28 of Sheet Metal Workers' Int'l Ass'n v. E.E.O.C., 478 U.S. 421, 443 (1986).

   With regard to the first prong of the test for contempt, an injunction is sufficiently clear and unambiguous to warrant a finding of contempt against a violating party if it leaves "no doubt in the minds of those to whom it was addressed . . . precisely what acts are forbidden." Drywall Tapers & Pointers v. Local 530, 889 F.2d 389, 395 (2d Cir. 1989).   Defendant advances two primary arguments in support of its assertion that the Injunction is not clear and unambiguous.   First, FilmOn argues that because "the Injunction does not expressly mention or prohibit the mini-antenna/DVR technology and the related Teleporter service," it cannot be said to clearly and unambiguously prohibit its use.   Def.'s Opp'n at 15.   Second, defendant maintains that "in light of the Supreme Court's findings in Aereo, FilmOn qualifies as a cable system and is entitled to the benefits and responsibilities of the compulsory license scheme under Section 111 of the Copyright Act." Id. at 18.   As a result, FilmOn asserts that Aereo generated some doubt regarding whether the retransmissions enabled by the mini-antenna system constitute infringement under the Injunction. Neither of these arguments is persuasive.

First, defendant's suggestion that the Injunction must list every potential transmission mechanism that it bars in order to be "clear and unambiguous" is simply untenable.  As the Supreme Court has noted, "[t]he technology of the Internet evolves at a rapid pace," and an injunction of the sort issued in this case would quickly become obsolete -- and lose its force as a permanent remedy -- if we were forced to name each and every infringing technology.  Ashcroft v. ACLU, 542 U.S. 656, 671 (2004).  Recognizing the speed of technological advances, the Injunction prohibited FilmOn from infringing, "by any means," plaintiffs' exclusive rights to broadcast its copyrighted programming.  Injunction ¶ 1 (emphasis added); see also CBS Broad., 2013 WL 4828592, at *6 (noting that the "scope [of the Injunction] is in no way limited to the precise form of infringement that precipitated" the filing of the initial lawsuit).  The fact that the Injunction did not explicitly mention the mini-antenna technology does not render it unclear, and defendant's argument to the contrary is baseless.

FilmOn's second argument is also unavailing because it hinges on a mischaracterization of the holding in Aereo.  Defendant is correct that, throughout the Aereo opinion, the Court likened Aereo to a cable company.  See, e.g., Aereo, 134 S. Ct. at 2506 ("Aereo's activities are substantially similar to

those of the CATV companies[2] that Congress amended the [Copyright] Act to reach."); id. at 2507 (recognizing "the many similarities between Aereo and cable companies").  But defendant attaches far too much importance to the Court's analogizing.  A series of statements that Aereo (and, by extension, FilmOn, "which uses technology identical" to Aereo, Def.'s Opp'n at 16) is very similar to a cable system is not the same as a judicial finding that Aereo and its technological peers are, in fact, cable companies entitled to retransmission licenses under § 111 of the Copyright Act.  Defendant may argue that the Supreme Court's language in Aereo implies that FilmOn may be entitled to a license under § 111, but an implication is not a holding.

In fact, the governing law in the Second Circuit is that services like FilmOn that retransmit broadcast programming are not entitled to compulsory licenses under § 111 of the Copyright Act.  See ivi, 691 F.3d at 284.  Unlike Aereo, which answered the question of whether Aereo "performed" petitioners' copyrighted works "publicly" under the Copyright Act, ivi focused squarely on the issue of whether internet services like FilmOn are cable systems under § 111.  And the ivi Court found that the Copyright Act's "legislative history, development, and

---

[2] The Supreme Court described CATV companies as "the precursors of modern cable systems."  Aereo, 134 S. Ct. at 2504.

purpose indicate that Congress did not intend for § 111 licenses to extend to Internet retransmissions." Id. The detailed analysis and ultimate decision of the Second Circuit is not rendered moot by the Supreme Court's use of an analogy in answering an entirely different question. Moreover, given that Aereo never mentioned ivi, let alone purported to overrule it, ivi remains controlling precedent here. See United States v. Mason, 412 U.S. 391, 395 (1973) (stating that when the Supreme Court "did not so much as mention" a decision, it cannot be said to have questioned or overruled that decision). Thus, based on the law in this Circuit, FilmOn is not entitled to a license under § 111, and its retransmissions clearly and unambiguously fall under the scope of conduct barred by the Injunction.

Having determined that the Injunction unquestionably disallows the use of mini-antenna technology to broadcast plaintiffs' content, the proof of FilmOn's noncompliance is clear and convincing. The exhibits submitted by plaintiffs more than adequately demonstrate that FilmOn streamed the networks' copyrighted programming to multiple cities in violation of the Injunction. See Morrow Decl. Exs. 1-2. Although FilmOn implied in its opposition brief that any noncompliance with the Injunction was unintentional, see Def.'s Opp'n at 20, the company's press release of June 30, 2014 belies this assertion.

The press release, issued before FilmOn learned of the instant order to show cause but after _Aereo_, boasts that defendant's mini-antenna technology continued to make available to FilmOn subscribers across the country the local broadcasts of eighteen major American cities, including New York.  _See_ Press Release, FilmOn, FilmOn Networks Continue Offering Broadcast Signals Under Copyright Act of 1976 (June 30, 2014).  Thus, defendant's own statements to the public indicate that it purposefully and willfully streamed plaintiffs' copyrighted content in violation of the Injunction.

Moreover, if we were to give credence to defendant's claim that New York content was made available outside the Second Circuit only accidentally, it does not excuse defendant's decision to continue to broadcast plaintiffs' programming within the Second Circuit after the _Aereo_ decision.  FilmOn has advanced a number of theories about the implications of _Aereo_, but the holding of that decision could not have been clearer: the use of the mini-antenna technology to retransmit broadcast networks' content without a license violated the Copyright Act. _See_ _Aereo_, 134 S. Ct. at 2505-11.  Thus, while the Second Circuit may have previously been a haven for companies like Aereo and FilmOn to employ the mini-antenna technology, after _Aereo_, that haven no longer existed.  Aereo understood this: in

the wake of the Aereo decision, it stopped its operations in the Second Circuit. Press Release, Aereo, A Letter to Our Consumers: Standing Together for Innovation, Progress and Technology (June 28, 2014). By contrast, FilmOn did not stop broadcasting plaintiffs' content until it learned of the instant order to show cause, twelve days after Aereo. Def.'s Opp'n at 10. For nearly two weeks, FilmOn was aware that its operations, based on the Supreme Court's determination, infringed plaintiffs' copyrights, yet defendant continued to purposefully broadcast content within the Second Circuit until it got caught. Therefore, regardless of whether New York programming leaked out of the Second Circuit for reasons beyond defendant's control, the retransmissions within the Second Circuit after Aereo constitute a clear violation of the Injunction.

In addition, assuming that FilmOn believed in good faith that the Aereo decision rendered it qualified to become a cable company under § 111, it would nevertheless have needed to obtain a license from the Copyright Office in order to have been eligible to retransmit plaintiffs' content; judicial opining on the definition of a cable system is no substitute for the mandatory administrative process required for content retransmitters. See Aereo, 134 S. Ct. at 2506 ("Section 111 creates a complex, highly detailed compulsory licensing scheme

-13-

that sets out the conditions, including the payment of compulsory fees, under which cable systems may retransmit broadcasts."); ivi, 691 F.3d at 283 ("The Copyright Office is the administrative agency charged with overseeing § 111's compulsory licensing scheme."). FilmOn does not have, and has never had, a license from the Copyright Office. Indeed, defendant admits that it did not even apply for a cable license until July 10, 2014, after plaintiff submitted this order to show cause -- a fact that undermines any claim by defendant that it was truly committed to complying with the letter of the law. Def.'s Opp'n at 9; see also id. at 11 (stating that defendant "has undertaken various diligent efforts to ensure ongoing compliance" with the law). Fundamentally, FilmOn cannot choose to ignore the Injunction merely because it anticipated someday being able to retransmit plaintiffs' content legally.

Not only is hope no defense to the violation of an injunction, but defendant's faith that the Copyright Office would grant it a cable license was misplaced. On July 23, 2014, the Copyright Office, citing ivi, expressed its view that FilmOn, as an internet retransmission service, "falls outside the scope of the Section 111 license," and that the Office did not "see anything in the Supreme Court's recent decision in [Aereo] that would alter this conclusion." Boccanfuso

-14-

Supplemental Reply Decl. Ex. 10.   Thus, not only was FilmOn's expectation of a license irrelevant, but it was erroneous as well.   Moreover, even if the Copyright Office had granted a license to FilmOn, this development would not have excused defendant's decision to preemptively stream content in violation of the Injunction.   The Copyright Office's decision does, however, provide additional support for our conclusion that FilmOn's use of the mini-antenna technology clearly falls within the ambit of the Injunction, and defendant should be held in contempt for willfully violating its terms.

We also find Mr. David in contempt of the Injunction.   The Injunction bound "all of [FilmOn.com's] officers, directors . . . and employees."   Injunction ¶ 1.   These categories clearly encompass Mr. David, who is identified in the company's own press releases as FilmOn.com's "founder and CEO."   Boccanfuso Reply Decl. Ex. 8; see also Fed. R. Civ. P. 65(d)(2) (providing that those bound by an injunction include the officers and employees of all parties who receive actual notice of the court order).   To find otherwise would allow defendant to "nullify a decree by carrying out prohibited acts through [non-parties]," a clearly untenable outcome.   Doctor's Assocs., Inc. v. Reinert & Duree, P.C., 191 F.3d 297, 302 (2d Cir. 1999) (internal quotation marks omitted).

-15-

Finally, defendant argues that this contempt should be resolved in the federal courts of California and the District of Columbia, which have also issued injunctions against defendant regarding internet retransmissions of plaintiffs' programming. See Def.'s Opp'n at 18–19.  We may easily dispose of this argument, as plaintiff's contempt application is directed to this Court's injunction.

Any remedy must be determined in context.  Here, the context includes the fact that this Court has found FilmOn in contempt of the Injunction before, see CBS Broad., 2013 WL 4828592, at *9, and the fact that FilmOn has also been held in contempt in the District Court for the District of Columbia, see Order, Fox Television Stations, Inc. v. FilmOn X LLC, Civil Action No. 13-758 (RMC), at 3 (Nov. 26, 2013).  In such a context, it would be reasonable to presume that FilmOn would have proceeded cautiously.  However, instead of seeking a modification of the Injunction or any other form of relief from this Court, defendant made the unilateral decision to stream plaintiffs' programming across the country.  The consequence of that choice is this decision.

The sanctions we impose are not punitive, but civil in nature, as they "serve the purpose of coercing future compliance" with the Injunction.  NLRB v. Local 3, Int'l Bhd. Of

-16-

Elec. Workers, 471 F.3d 399, 405 (2d Cir. 2006) (internal quotation marks omitted).  FilmOn has demonstrated a repeated willingness to flout the authority of the federal judiciary, and it is essential for this Court to make clear the obvious: the Injunction and the Judgment are not mere suggestions, but are orders that demand compliance.

## CONCLUSION

Based on the foregoing, we find FilmOn in civil contempt of court for its violation of the Injunction.  Pursuant to paragraph 3 the Judgment, FilmOn must pay $10,000 for each of the nine days of its noncompliance.[3]  Therefore, we impose a sanction of $90,000.  We also reiterate that while it appears that defendant has ceased streaming plaintiffs' programming, such conduct is covered by the Injunction and future retransmission of plaintiffs' copyrighted content without a license will subject defendant to significant penalties per day of noncompliance.

---

[3] FilmOn's rights and responsibilities in this Circuit are tethered to those of Aereo, as both companies employed the same mini-antenna technology to broadcast the networks' programming.  Consequently, it is reasonable to assume that FilmOn would follow Aereo's lead in responding to the Aereo decision.  Aereo did not suspend its operations until June 28, 2014, and we believe it would be unfair to hold FilmOn in contempt for continuing to stream content when Aereo, the company explicitly bound by the Supreme Court's decision, continued to do so itself.  Therefore, we find that FilmOn's noncompliance began on June 29, 2014, the day after Aereo stopped retransmitting content in the wake of Aereo, and ended on July 7, 2014, the day FilmOn deactivated its mini-antenna service.

Plaintiffs are also entitled to attorneys' fees in an amount to be determined. Plaintiffs' counsel shall submit on notice a proposed form of judgment, supported by an affidavit detailing their attorneys' fee request, to this Court on or before July 30, 2014. FilmOn's counter proposal, if any, shall be filed no later than August 5, 2014.

**SO ORDERED.**

Dated:     New York, New York
           July **24**, 2014

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

-18-

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

**Counsel for Plaintiffs**
Peter L. Zimroth, Esq.
Arnold & Porter, LLP
399 Park Avenue
New York, NY 10022

Robert Alan Garrett, Esq.
Hadrian R. Katz, Esq.
C. Scott Morrow, Esq.
Arnold & Porter, LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004

Paul M. Smith, Esq.
Jenner & Block LLP
1099 New York Avenue, Suite 900
Washington, DC 20001-4412

**Counsel for Defendant**
Ryan G. Baker, Esq.
Baker Marquart LLP
10990 Wilshire Blvd., Fourth Fl.
Los Angeles, CA 90024